**Barbara Lee SHIRLEY,**
**Plaintiff-Appellee,**

v.

**CHAGRIN FALLS EXEMPTED VILLAGE SCHOOLS BOARD OF EDUCATION et al., Defendants-Appellants.**

**No. 75–1180.**

United States Court of Appeals,
Sixth Circuit.

Argued April 23, 1975.

Decided Sept. 16, 1975.

John C. Burkholder, Means, Bichimer, Burkholder & Baker, Columbus, Ohio, for defendants-appellants.

Keith D. Bevan, Solon, Ohio, Charles E. Guerrier, Jane M. Picker, Cleveland, Ohio, for plaintiff-appellee.

Before MILLER and ENGEL, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

ENGEL, Circuit Judge.

This is an appeal by the individual members of the Chagrin Falls Board of Education[1] from a judgment entered by the district court ordering them to pay $1,037.25 as damages to plaintiff Barbara Lee Shirley, a former school teacher in the Chagrin Falls system.

Barbara Shirley, a physical education teacher at Chagrin Falls High School, discovered she was pregnant in November, 1971, and was due to give birth in June, 1972. During this period, the Board of Education had the following pregnancy policy in effect:

"Section 320.03. In the case of pregnancy, the employee shall resign and/or her contract shall become null and void at the end of the fifth (5th) month of pregnancy, or at the end of a semester, whichever occurs first. Abuse of this policy will be a just cause to prevent future re-employment.

The employee will not be permitted to return to her former position earlier than three months following the birth of the child, and then only upon presentation of a physician's certificate that she is able, in all ways, to perform all the duties of her assignment. New applicants will not be considered for employment until this three months' period has elapsed following the birth, and the presentation of the necessary physician's statement."

The Board pregnancy policy had been in effect since 1964.

On December 7, 1971, plaintiff notified the school board members by letter that she wished to teach until the end of her fifth month of pregnancy (March 1, 1972), rather than resign at the end of the first semester. Her request was informally rejected, though no formal Board action was taken. In response to this decision of the Board, plaintiff submitted a second letter of resignation effective at the end of the first semester. Following the birth of her child, plaintiff left the state and has not sought reinstatement as a teacher.

Mrs. Shirley brought an action in federal district court pursuant to 42 U.S.C.

1. By order of September 4, 1973, the district court dismissed the School Board as an entity as a defendant, holding that the Board was not a "person" within the meaning of § 1983 and thus could not be held liable under that statute. This order is not appealed from by plaintiff.

§ 1983 alleging that application of the pregnancy policy to her discriminated against her as a female employee and deprived her of her rights, privileges and immunities secured by the Constitution. She sought as relief back pay and attorney's fees.

At the non-jury trial, defendants did not contend that their pregnancy policy was constitutional in light of *Cleveland Board of Education v. LaFleur,* 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), but instead interposed several affirmative defenses to liability. First, they contended at trial that a monetary award against Board members was barred by the Eleventh Amendment. On the basis of *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the district judge rejected this defense.

Defendants' second affirmative defense was that of a "qualified immunity". The district judge, again relying upon *Scheuer v. Rhodes, supra,* recognized that the school board members did enjoy a qualified immunity for official acts performed in good faith and upon a reasonable belief that the acts performed were constitutional.

Further, he found that on January 17, 1972, the date on which the Board accepted Mrs. Shirley's resignation, several members of the Board were aware of Judge Connell's decision in *LaFleur v. Cleveland Board of Education,* 326 F.Supp. 1208 (N.D.Ohio 1971), which had upheld a similar pregnancy policy. The district judge also found that the defendants had acted in the good faith belief that their pregnancy policy was valid and should be adhered to by the Board.

Nevertheless, the district judge saw the key question as being whether the Board members had met their burden of showing that at the time of Mrs. Shirley's forced resignation, there were reasonable grounds for believing the pregnancy policy did not deprive Mrs. Shirley of her constitutional rights. He held that in reliance upon the district court decision in *LaFleur,* the defendants had reasonable grounds to believe that the

policy requiring resignation at the end of the fifth month of pregnancy was constitutional. However, he concluded that the district court decision (not as yet reversed by the Sixth Circuit) provided no reasonable grounds for belief that the "end of a semester" policy was constitutional because such a policy was not involved in *LaFleur.*

He found that this policy was clearly enacted for the convenience of the Board and school administrators so as to allow them to hire teachers for an entire semester, and as such was arbitrary on its face.

The district judge held that this arbitrary policy deprived Mrs. Shirley of her constitutional right to liberty in the exercise of personal choice in matters of family life in conjunction with teaching. Concluding there was no reasonable basis for believing this policy to be constitutional, the district judge held that under *Scheuer v. Rhodes, supra,* defendants were stripped of any qualified immunity they might have had for their actions. Thus, the district judge awarded damages in the amount of $1,037.25, this being the amount of back pay which Mrs. Shirley lost between the end of the first semester (January 28) and the end of her fifth month of pregnancy (March 1), plus interest.

At the time of the district judge's decision, he did not have the benefit of the later Supreme Court decision in *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), which dealt directly with the liability of school board members, although not in the context of dismissal of a teacher. There Mr. Justice White set forth the following standard of qualified immunity which the Court enunciated for school board members:

> To be entitled to a special exemption from the categorical remedial language of § 1983 in a case in which his action violated a student's constitutional rights, a school board member, who has voluntarily undertaken the task of supervising the operation of the school and the activities of the stu-

dents, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges. Such a standard neither imposes an unfair burden upon a person assuming a responsible public office requiring a high degree of intelligence and judgment for the proper fulfillment of its duties, nor an unwarranted burden in light of the value which civil rights have in our legal system. Any lesser standard would deny much of the promise of § 1983. Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student. That is not to say that school board members are "charged with predicting the future course of constitutional law." *Pierson v. Ray,* supra, 386 U.S. [547], at 557, 87 S.Ct. [1213], at 1219 [18 L.Ed.2d 288]. A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith. 420 U.S. at 322, 95 S.Ct. at 1000.

While the majority opinion in *Wood* stated that its holding was limited to the "specific context of school discipline", 420 U.S. at 322, 95 S.Ct. 992, there appears no reason why its rationale should not apply here also.

The question, therefore, is whether the school board action taken with regard to Mrs. Shirley was not only violative of her constitutional rights, but was also at that time so in disregard of the "settled, indisputable law" and "unquestioned constitutional rights" that it cannot reasonably be characterized as being in good faith.

To some extent, this determination requires an understanding of the district court decision in *LeFleur, supra,* which had not yet been reversed at the time the action concerning Mrs. Shirley was taken. The Cleveland Board of Education regulation concerning pregnancy, which the district court upheld in its entirety, read in pertinent part:

"APPLICATION A maternity leave of absence shall be effective not less than *five (5) months before the expected date* of the normal birth of the child. Application for such leave shall be forwarded to the Superintendent as least *two (2) weeks before the effective date of the leave of absence.* A leave of absence without pay shall be granted by the Superintendent for a period not to exceed *two (2) years.*

"REASSIGNMENT A teach may return to service from maternity leaves not earlier than the *beginning of the* regular school semester which follows the child's age of *three (3) months.* In unusual circumstances, exceptions to this requirement may be made by the Superintendent with the approval of the Board.

Judge Connell's opinion in the district court upheld the requirement that teachers resign at the end of the fourth month of pregnancy on the ground that the chances of injury due to violence or accident were greater to pregnant women and that the requirement helped insure classroom continuity when a teacher was required to leave because of pregnancy. The court upheld the portion of the regulation which allowed a teacher to return only at the beginning of the first semester after the child reached three months of age on this ground:

"The provision for resumption of employment after the child's birth serves the purposes of maintaining classroom continuity and protecting the health of the mother and child." 326 F.Supp. at 1213.

On appeal the defendants contend that the pregnancy policy of the Cleveland

Board upheld in *LaFleur* and the Chagrin Falls policy were so substantially similar that the Board was justified in relying upon the decision in *LaFleur* in enforcing their entire policy. They concede that the Cleveland policy had no "end of a semester" resignation requirement, but they note that the Cleveland policy required resignation one month earlier than did the Chagrin Falls policy. They also note that Judge Connell's decision in *LaFleur* upheld a provision of the Cleveland policy which did not allow a teacher to return to work until the beginning of the first semester *after* her child reached three months of age. They argue that this provision, like the "end of a semester" provision involved here, was surely promulgated for the convenience of the Board and the school administration, allowing the Board to hire teachers for a full semester. They argue that where such a provision had been judicially upheld in the context of rehiring teachers after the birth of a child, it was reasonable for the defendants to assume it would be upheld in the context of pre-birth resignations.

Defendants also note that there were no binding judicial decisions in conflict with the pregnancy policy at the time of the Board's action. The sole case indicating such a policy would violate constitutional rights was *Cohen v. Chesterfield County School Board,* 326 F.Supp. 1159 (E.D.Vir.1971). This district court decision would not, of course, be binding in the Sixth Circuit.

Although the case was not mentioned in the district court opinion, appellees at oral argument and in their brief suggest that on the basis of *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), defendants should have known that their "end of a semester" policy, based as it was upon the administrative convenience to the Board in hiring teachers, was clearly unconstitutional. In *Reed,* an Idaho statute which designated persons who are entitled to administer the estate of one who dies intestate, gave a mandatory preference to males over females where otherwise under the statute the two parties would be equally entitled to administer the estate. In holding that the statute was unconstitutional, the Supreme Court stated:

> To give a mandatory preference to members of either sex over members of the other, merely to accomplish the elimination of hearings on the merits, is to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause of the Fourteenth Amendment; and whatever may be said as to the positive values of avoiding intrafamily controversy, the choice in this context may not lawfully be mandated solely on the basis of sex. 404 U.S. 76, 77, 92 S.Ct. 254.

Appellees contend that *Reed* clearly indicates that discrimination on the basis of sex for the purpose of administrative convenience is unconstitutional, and since the *Reed* decision has been issued prior to the Board's action relative to Mrs. Shirley, they were acting in violation of her clearly established constitutional rights in requiring that she resign at the end of the semester prior to the end of her fifth month of pregnancy.

*Reed,* however, involved a clear case of discrimination on the basis of sex alone. In *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), the Court held that statutory classifications dealing with pregnancy are not necessarily classifications on the basis of sex. In *Geduldig,* a California statute providing for payment of disability benefits excluded disability resulting from normal pregnancy. In holding that the statute did not violate the Equal Protection Clause of the Fourteenth Amendment, the Court stated in a footnote:

> The dissenting opinion to the contrary, this case is thus a far cry from cases like *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical

condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed, supra,* and *Frontiero, supra.* Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition. 417 U.S. at 496, n. 20, 94 S.Ct. at 2492.

It should also be noted that when the Supreme Court upheld the Sixth Circuit reversal of the district court decision in *LaFleur,* it did so not on the basis that the statute discriminated on the basis of sex, but rather on the ground that the pregnancy policy created irrebuttable presumptions not constitutionally permissible.

It is important also that the Supreme Court in *LaFleur,* both in the majority opinion and Justice Powell's concurring opinion, noted that the school board might have a legitimate interest in wanting teachers to resign at the end of a semester, as it "rationally serves this legitimate state interest" (of insuring continuity). 414 U.S. at 654, 94 S.Ct. at 803 (Powell, J., concurring). However, because the end of semester provision operated in connection with an absolute cutoff point in terms of months, the Supreme Court found it not to be rational.

From the foregoing, it can be seen that at the time the Board decision was made, there had in fact been no adjudication binding on the Board that

its existing pregnancy policy was unconstitutional, let alone unquestionably so. To compel the Board members to respond personally in damages in such circumstances would be to hold that they were "charged with predicting the future course of constitutional law", *Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1219 (1967).

Two further arguments in support of affirmance are presented which merit brief discussion.

Plaintiff argues that the defense of qualified immunity is applicable only to actions for damages and not to suits for back pay. Since this is a suit to recover back pay, she claims that the defense of qualified immunity should not have been considered in any event.

While there is support for the contention that back pay, when sought in conjunction with reinstatement, is considered part of the total equitable remedy, see *McFerren v. County Board of Education of Fayette Co., Tenn.,* 455 F.2d 199 (6th Cir. 1972), *cert denied* 407 U.S. 934, 92 S.Ct. 246, 32 L.Ed.2d 817 (1972), it seems equally clear that where the action is against the individual members of the Board, it is in effect an action for damages, whether it is styled as such or not. *Skehan v. Board of Trustees of Bloomsburg State Col.,* 501 F.2d 31, 43 (3rd Cir. 1974), *judgment vacated,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975).[2]

Finally, appellee argues that because her letter of resignation was discussed and considered at an "Executive Session" following a regular board meeting, and at this executive session the decision was made not to honor her request to remain until the end of her fifth month of pregnancy, defendants have waived any claim of qualified immunity they might have. The rationale is that such meetings are not authorized by statute

---

2. The judgment in *Skehan, supra,* was vacated by the Supreme Court and remanded to the Court of Appeals for reconsideration in light of *Alyeska Pipeline Service Co. v. Wilderness So-* *ciety,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), and *Wood v. Strickland, supra,* neither of which would appear to have any bearing on the question of back pay.

and thus defendants' actions are *ultra vires* and not entitled to any immunity.

 The minutes of the Regular Meeting of the Board of Education of January 17, 1972 reveal that the decision to accept her resignation was made at that meeting. O.R.C. § 121.22 requires that all meetings of state agencies at which formal action (such as resolutions, regulations, rules, etc.) is to be taken be open to the public, but it seems to contemplate that such agencies also be allowed to meet in executive session if no such formal action is to be taken at the meeting. *State ex rel. Humphrey v. Adkins,* 18 Ohio App.2d 101, 247 N.E.2d 300 (1969). Here, since the only formal action was taken at a regularly scheduled meeting, the statute was not violated.

Reversed and remanded for entry of judgment for the defendants.