**Kathryn MARTIN, Plaintiff-Appellant,**

v.

**UNIVERSITY OF LOUISVILLE et al.,**
**Defendants-Appellees.**

No. 75–1336.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 4, 1975.
Decided Aug. 30, 1976.

---

Frank A. Logan, John T. Fowler, Louisville, Ky., for plaintiff-appellant.

Robert Matthews, John S. Reed, Greenebaum, Doll, Matthews & Boone, Edwin W. Paul, Legal Affairs Officer, Louisville, Ky., for defendants-appellees.

Before EDWARDS, CELEBREZZE, and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

This is an action brought by Kathryn Martin, a tenured professor at the University of Louisville, for approximately $53,000 in back wages she claims were wrongfully withheld from her during the academic years 1970–1971, 1971–1972, and 1972–1973. Named as defendants were the University of Louisville and the individual members of the Board of Trustees of the University as of September 17, 1973. The action was brought pursuant to 42 U.S.C. § 1983, and the district court's jurisdiction premised upon 28 U.S.C. § 1343 and § 1331.

Plaintiff was a full time faculty member with permanent tenure in the university's Kent School of Social Work when, on January 20, 1970, she received a letter from the school's dean, Kenneth Kindelsperger, ad-

vising her that he was recommending to the president of the university that her contract not be renewed for the 1970–1971 school year. Kindelsperger advised Mrs. Martin that pursuant to university regulations she had a right to submit a request for hearing before the Senate Tenure Committee on the charges outlined in his letter.[1]

On February 2, 1970, Mrs. Martin wrote the president of the university acknowledging receipt of Dean Kindelsperger's letter. She stated that she did not believe the letter set forth with enough specificity charges against which she should be required to defend at a hearing, but asked nonetheless that her letter be treated as a request for such hearing in order to protect her rights. On February 20, 1970, Dr. Louis Kesselman, to whom the matter had been referred in his capacity as Chairman of the Senate Tenure Committee, responded to Mrs. Martin's letter in part as follows:

"This will inform you that the Senate Committee on Grievances and Tenure is aware of your request for a hearing to respond to Dean Kindelsperger's charges. I have talked with your attorney, Mr. Frank Logan, who expressed a desire to exhaust all other possibilities before proceeding with the hearing. My understanding is that no hearing will be scheduled until I hear from him again."

Thereafter settlement negotiations were undertaken by Mr. Logan for plaintiff and attorneys for the university without success, although the parties were apparently close to agreement in May, 1970. Mrs. Martin continued to teach and receive her pay until the end of the academic year in July, 1970, but when the school year resumed in the fall of 1970, plaintiff did not return to work at the university and was not paid. Negotiations continued thereafter on and off over the next two years with no settlement of the dispute reached. Finally, on November 8, 1972, Mr. Fowler, plaintiff's substituted counsel, made a formal request for a hearing for Mrs. Martin before the Senate Tenure Committee. Hearings were held before the Committee on June 12, 1973, and it made findings that there was insufficient evidence to sustain the charges against Mrs. Martin made by Dean Kindelsperger some three years earlier. On September 17, 1973, the Board of Trustees accepted these findings and, by resolution, recognized Mrs. Martin as a faculty member for the semester beginning in September, 1973. Nevertheless, the Board of Trustees refused her request for back pay on the grounds that she had not reported for work or performed her teaching duties in the interim period.

Mrs. Martin thereafter filed this action for back wages in district court. On defendant's motion for summary judgment, Judge Allen ruled that the undisputed facts showed that Mrs. Martin had waived her right to a due process hearing prior to July 1970 when her pay was cut off, and had thus shown no federal constitutional violation.[2] He did not rule upon defendant's alternative contention that an award of back pay was prohibited by the Eleventh Amendment to the United States Constitution. Because we agree with defendant-appellees' contentions in this regard, we affirm the judgment of the district court.

## I.

The Eleventh Amendment to the United States Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

 It is established that the amendment applies not only to suits in which the state is named directly as a party, but also where suit is brought against a state agency or state officers, and the action is in essence one for recovery of money from the

---

1. The charges in Dean Kindelsperger's letter related to student complaints about the quality of Mrs. Martin's lectures, poor attendance at her classes, complaints about her physical ability to function, and her lack of creative research or writing in her field of expertise.

2. No pendant claim under state law was presented, and the district judge dismissed the complaint without prejudice to Mrs. Martin's right to prosecute any cause of action she might have against defendants in the state courts.

**1174**

state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945).[3]

Prior to July 1, 1970, the University of Louisville was a municipal institution under Kentucky Revised Statutes (KRS) Chapter 165. By KRS § 164.810(3), however, the university was designated as a "state institution" under Kentucky law and appellant does not dispute that at all times relevant to this controversy the university was a state institution for purposes of the Eleventh Amendment. The key issue, then, is whether the Commonwealth of Kentucky has waived its immunity and consented to suit for money damages in federal court.

The University of Louisville was created by Act of the Kentucky legislature in 1846. The original charter provided that the university could "sue and be sued, . . . in all courts of law and equity of this Commonwealth. . . . " This language was abrogated in 1970 when the university became a state institution. Instead, in § 3.3(A) of the amended charter, the Board of Trustees of the university was granted all "the authorities, immunities, rights, privileges, and franchises usually attaching to the governing bodies of Kentucky public higher educational institutions, together with those granted such corporations by Kentucky Revised Statutes, Sections 273.-161 to 273.990 . . . " KRS 273.171(2) gives the university the power to "sue and be sued, complain and defend, in its corporate name." Plaintiff places primary reliance upon this language in support of her contention that the Kentucky legislature has waived the university's right to assert sovereign immunity in suits brought against it in federal court.

██ The general standard governing the finding of a waiver by a state of its sovereign immunity is strict. As pointed out by the Supreme Court in *Edelman v. Jordan, supra* :

In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). We see no reason to retreat from the Court's statement in *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, at 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121 (footnote omitted):

> "[W]hen we are dealing with the sovereign exemption from judicial interference in the vital field of financial administration a clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found."

*Edelman v. Jordan, supra*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662.

This court on two occasions recently has had an opportunity to apply the principles of *Edelman v. Jordan, supra*, in the context of suits against university officials. In *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347 (6th Cir. 1975), *cert. denied*, —— U.S. ——, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976), this court held that the State of Tennessee had waived its right to assert the defense of sovereign immunity in suits brought against the University of Tennessee in federal court. The court there examined the history of the university, and noted that its original charter provided that it may "sue and be sued, plead and be impleaded, in any court of law or equity in this state or elsewhere." In concluding that the state had waived its right to assert the Eleventh Amendment defense, the court noted:

> In this case, however, the University of Tennessee was created, only a few years after the ratification of the eleventh amendment, with the unrestricted right to sue and to be sued "in any court of law or equity." We see no indication that

---

**3.** The language of the amendment has consistently been construed to bar suits by the state's own citizens as well as citizens of other states.

*Edelman v. Jordan, supra*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (and cases cited therein).

this sweeping consent was intended to be limited to suits brought in the state courts. To the contrary, by its terms the consent is general and purports to apply to any court and to any type of suit. 513 F.2d at 353.

In *Long v. Richardson*, 525 F.2d 74 (6th Cir. 1975), suit was brought by former students at Memphis State University to recover out-of-state tuition fees paid while plaintiffs were students at the university. In support of their theory that the State of Tennessee had waived its Eleventh Amendment defense to suit in federal court, plaintiffs relied primarily upon language in T.C.A. § 49–3239 which vested in the board of regents of Memphis State University "similar and comparable responsibility and authority in the board as is authorized for the board of trustees of the University of Tennessee."

The court refused to find in this language the clear expression of a waiver as required by *Edelman v. Jordan, supra.* The court noted that the Tennessee Supreme Court had applied the doctrine of governmental immunity to suits brought against the university in state court, and found this highly persuasive on the federal constitutional question. This judgment of the district court dismissing the action was thus affirmed.

We turn then to the question of whether the "sue and be sued" language of KRS § 273.171(2) can be construed as a clear expression by the Commonwealth of Kentucky of consent to suit against the University of Louisville in federal court. That a state may consent to be sued in its own courts does not necessarily imply its consent to suit in federal court. *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 465, 65 S.Ct. 347, 89 L.Ed. 389; *Soni v. Board of Trustees of University of Tennessee*, 513 F.2d 347, 353 (and cases cited therein). In *Ford Motor Co., supra,* suit was brought in federal court against the Indiana Depart-

ment of Treasury and Indiana state officials for a refund of gross income taxes paid by the plaintiff. Defendants raised the defense of the Eleventh Amendment and plaintiff in turn argued the defense had been waived by the state. Two Indiana statutes were arguably applicable to the waiver issue. Section 64–2614(a) authorized "action or suit against the department in any court of competent jurisdiction; and the circuit or superior court of the county in which the taxpayer resides or is located shall have original jurisdiction of action to recover any amount improperly collected." Based upon its prior decision in *Great Northern Insurance Co. v. Read*, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944), the Supreme Court concluded that this language constituted a waiver of state immunity from suit in state court only.

Alternatively plaintiff suggested that Section 60–310, creating a state board of finance, might be applicable. That section provided in part:

"Such board may sue, and be sued in its name, in any action, and in any court having jurisdiction, whenever necessary to accomplish the purposes of this act."

The Supreme Court felt that section 64–2614(a) was the statute applicable to suits for refunds. Nevertheless, the Court concluded alternatively that even if Section 60–310 were applicable to suits for recovery of taxes paid, it would not find a waiver of state immunity to suit in federal court:

"If it is held by Indiana that the state's consent to be sued for the recovery of taxes was covered by § 60–310 rather than by § 64–2614(a), we should be of the opinion, until otherwise advised by Indiana adjudications, that the consent was limited to suits in the state courts."

323 U.S. 459, 466 n. 8, 65 S.Ct. 347, 351, 89 L.Ed. 389.

██ The "sue and be sued" language contained in KRS § 273.171(2) is less broad than that which the Supreme Court in *Ford Motor Co., supra,*[4] construed as effecting no

---

4. Other courts have construed similar "sue and be sued" language in the grant of a corporate charter to a university not to create a waiver of sovereign immunity. *Hamilton Mfg. Co. v. Trustees of State Colleges in Colorado*, 356 F.2d 599 (10th Cir. 1966); *Board of Regents of*

*University of Nebraska v. Dawes*, 370 F.Supp. 1190 (D.Neb.1974); cf. *Connelly v. University of Vermont and State Agricultural College*, 244 F.Supp. 156 (D.Vt.1965). We think the language contained in § 273.171(2) is clearly distinguishable from the broad language of the

waiver of the Eleventh Amendment, and in the absence of any Kentucky decisional law to the contrary,[5] we refuse to find a waiver here. Our conclusion is consistent with three decisions of the United States District Courts of Kentucky which have held that no waiver to suit in federal court is to be implied from this language. *Depperman v. University of Kentucky*, 371 F.Supp. 73 (E.D.Ky.1974), *Strunk v. Western Kentucky University*, 10 CCH E.P.D. ¶ 10,480 (E.D.Ky. August 6, 1975), *Williams v. University of Kentucky*, 10 CCH E.P.D. ¶ 10,-483 (E.D.Ky. April 28, 1975).[6] Each case involved a suit for money damages against a public university in Kentucky which was dismissed on the ground that the Eleventh Amendment barred the suit. Judge Swinford, in *Depperman*, and Chief Judge Moynahan, in *Strunk* and *Williams*, each concluded that the mere fact that the Kentucky legislature had conferred corporate status on the university in question, with the attendant right to sue and be sued, was insufficient to infer a waiver of Eleventh Amendment rights. We agree with the conclusion of the district court in each of these cases.[7]

Named also as defendants in the complaint are the individual members of the Board of Trustees of the University of Louisville. Although plaintiff prays for judgment against "the defendants, jointly or severally, for her salary for the school years 1970–1971, 1971–1972 and 1972–1973, in the amount of $53,287.07.", no specific reference to the individual members of the Board is made other than reference to Edward G. Middleton, Chairman of the Board, as having on March 8, 1974 written Mrs. Martin's counsel indicating that the Board contemplated no further action on her request for payment of her back wages. The complaint alleges that the named defendants were members of the Board on September 17, 1973 "at the time of the action complained of herein", that date being the date on which the Board of Trustees determined to rehire Mrs. Martin, but at the same time not to honor her request for payment of back salary. There is no evidence, nor in fact any claim, that the Board members participated in any of the controversy between Dean Kindelsperger and Mrs. Martin, or that any individual members of the Board of Trustees were involved in any way other than the action on September 17, 1973. There is no charge that the Board generally or that any member thereof acted in bad faith or with malice.

University of Tennessee charter in *Soni, supra*, which was construed as a waiver of sovereign immunity. There the sweeping consent to suit "in any court of law or equity in this State or elsewhere" clearly implied consent to suit in federal court. No such consent to suit in federal court can be implied from the language here.

5. We have found no Kentucky cases indicating that this language can be construed as a consent by the Commonwealth to suit against the university in federal court. In *Daniel's Adm'r. v. Hoofnel*, 287 Ky. 834, 155 S.W.2d 469 (1941), the Kentucky Court of Appeals noted that this language did not waive a public university's sovereign immunity from suit based upon a tort of its officers or agents brought in state court. Subsequent to this decision, the Kentucky legislature passed legislation, KRS § 44.-070–.160, creating a board of claims with authority to compensate individuals for injuries sustained as a result of negligence by agencies or employees of the Commonwealth. Limited review of the Board's decision was provided in the courts of Kentucky. Thereafter, in 1966, the Kentucky legislature passed a second statute, KRS § 44.260–.330, providing that persons with contract claims against state agencies and departments could file suit in Franklin Circuit Court to recover on their claims. Assuming that the university would be amenable to suit in the Kentucky courts under these statutes, *University of Kentucky v. Guynn*, 372 S.W.2d 414 (Ky.1963), the statutes certainly cannot be construed as a waiver by the Commonwealth of its immunity to suit in *federal court*.

6. It is clear that the universities named as defendants in these suits were subject to the "sue and be sued" language in KRS § 273.171(2) as is the University of Louisville here. See KRS § 273.387.

7. The opinions of these federal district judges from Kentucky on questions of the interpretation of Kentucky law are entitled to considerable weight in this court absent any reported decisions of the Kentucky courts on this precise issue. *Randolph v. New England Mutual Life Ins. Co.*, 526 F.2d 1383 (6th Cir. 1975); *Filley v. Kickoff Publishing Co.*, 454 F.2d 1288 (6th Cir. 1972).

Under such circumstances, we construe the complaint as being a suit against the Board members in their official capacity only, and not as one seeking to impose personal liability for back wages upon them.[8] Since this is in essence a suit against the Commonwealth of Kentucky for recovery of monies to be paid from its treasury, these defendants are entitled to assert the immunity accorded by the Eleventh Amendment to the Commonwealth itself.

## II.

Assuming, however, that plaintiff does seek to impose personal liability for her alleged losses upon the individual members of the Board, she fares no better. As members of the Board of Trustees, the defendants had a qualified immunity from personal liability for damages for acts performed within the scope of their official duties. *Scheurer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *O'Conner v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *see also Shirley v. Chagrin Falls Exempted Village Schools Board of Education*, 521 F.2d 1329 (6th Cir. 1975), *cert. denied sub nom. Shirley v. Burns*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976). The standard for measuring a school board member's conduct to determine whether he is entitled to a qualified immunity from personal liability was recently stated by the Supreme Court in *Wood v. Strickland, supra*:

> The official himself must be acting sincerely and with a belief that he is doing right, but an act violating a student's constitutional rights can be no more justified by ignorance or disregard of settled, indisputable law on the part of one entrusted with supervision of students' daily lives than by the presence of actual

malice. To be entitled to a special exemption from the categorical remedial language of § 1983 in a case in which his action violated a student's constitutional rights, a school board member, who has voluntarily undertaken the task of supervising the operation of the school and the activities of the students, must be held to a standard of conduct based not only on permissible intentions, but also on knowledge of the basic, unquestioned constitutional rights of his charges.

420 U.S. 308, 321–322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214.

There is nothing in the complaint, nor any affidavit in opposition to defendants' motion for summary judgment, which suggests that the individual defendants herein acted in bad faith or with malice in denying Mrs. Martin her request for back pay at the time they reinstated her. Further, no pleading or affidavit suggests that their actions were in violation of plaintiff's "basic unquestioned constitutional rights." *Wood v. Strickland, supra.* As noted earlier, there is no claim that any defendants were involved in any of the events in controversy prior to September 17, 1973. At that time, they took action reinstating plaintiff to her position and denying her back pay on the grounds she had not reported for work as required by university regulations. Assuming Mrs. Martin is correct in her assertion that under university regulations she was entitled to a hearing prior to the suspension of her pay, there was at least some evidence from which the Board members could infer that she had waived that hearing. Their action was certainly not a violation of unquestioned constitutional rights. Cf. *Shirley v. Chagrin Falls Exempted Village Schools Board of Education, supra*, 521 F.2d at 1332, 1333.

Accordingly, the judgment of the district court is affirmed.

---

8. The question of whether the Commonwealth of Kentucky is the real party in interest for purposes of the Eleventh Amendment is "determined by the essential nature of the proceeding as it appears from the entire record." *Harrison*

*Construction Co. v. Ohio Turnpike Commission*, 272 F.2d 337, 339 (6th Cir. 1959), quoting *Copper S.S. Co. v. State of Michigan*, 194 F.2d 465, 466 (6th Cir. 1952).