John MEYERS, Plaintiff–Appellee,

v.

CITY OF CINCINNATI, Defendant,

Scott Johnson, Individually and as City Manager; David E. Rager, Individually and as Director of Safety, Defendants–Appellants.

No. 91–4182.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1992.

Decided Nov. 12, 1992.

William S. Wyler, Donna M. Bergmann (argued), Donald B. Hordes (briefed), Schwartz, Manes & Ruby, Cincinnati, Ohio, for plaintiff-appellee.

Kim Wilson Burke, James F. McCarthy, III (briefed), Robert H. Johnstone, Jr. (argued), Fay D. Dupuis, City Solicitor's Office for City of Cincinnati, Cincinnati, Ohio, for defendants-appellants.

Before: MERRITT, Chief Judge; and KEITH and RYAN, Circuit Judges.

MERRITT, Chief Judge.

We must determine whether the defendants here, two municipal officials, are entitled to the affirmative defense of qualified immunity following their dismissal of a public employee for his exercise of protected free speech under the First Amendment. The District Court reasoned that the law concerning public employees' free speech rights appeared to be settled at the time of their actions. The Court then held that the defendants Johnson and Ragan should have been reasonably aware of restrictions on their powers to discipline employees for the exercise of those rights. The trial court therefore found the defendants to be ineligible for the shield of qualified immunity. For the following reasons, we dis-

agree, and we accordingly reverse and remand the case to the District Court.

The essential facts underlying this appeal are described at length in this Court's earlier decision. That appeal concerned whether the City of Cincinnati and defendants Scott Johnson and David Rager—the city's manager and director of safety, respectively—demoted or constructively discharged the plaintiff, an assistant fire chief, in violation of his First Amendment rights. We held that such a violation occurred. *See* 934 F.2d 726 (6th Cir.1991). We therefore reversed the case in part and remanded it to the District Court to determine whether the three defendants were entitled to any affirmative defenses.[1]

On remand the defendants Rager and Johnson asserted the defense of qualified immunity under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The District Court determined that they were not entitled to its protection:

The sole question, therefore, is whether or not defendants Rager and Johnson can appropriately say that they as "reasonable persons" did not know of a public employee's First Amendment rights and that an employee could not be disciplined for exercising such rights. The law on which the Sixth Circuit relied in determining that plaintiff's First Amendment rights were violated has been settled for over twenty years.... Both Mr. Rager and Mr. Johnson were supervisory employees of a high order and both must be deemed to have been aware of the restrictions imposed upon employers by [*Rankin v. McPherson,* 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)] and [*Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)] in terms of First Amendment rights of employees. The Court finds that the assertion of qualified immunity is meritless.

Order at 2–3 (S.D.Ohio, Nov. 18, 1992). Following the denial of their affirmative defense, the defendants brought this inter-

---

1. The plaintiff's case against the City of Cincinnati has proceeded separately, with some $380,000 in damages being awarded to the plaintiff.

Only the qualified immunity judgment concerning defendants Rager and Johnson is on appeal here.

locutory appeal under 28 U.S.C. § 1291 and *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (holding a district court's denial of qualified immunity, to the extent that it turned on a question of law, to be an appealable "final decision" under § 1291).

■ The application of qualified immunity is a question of law. *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir.1988). Our review is undertaken accordingly under a *de novo* standard. *Long v. Norris*, 929 F.2d 1111, 1114 (6th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991).

■ As a rule, "governmental officials performing discretionary tasks generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987), and *Mitchell*, 472 U.S. at 517, 105 S.Ct. at 2810. This immunity is premised upon sound policy grounds: where governmental officials have duties that "legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738, *quoting Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

■ The doctrine of qualified immunity represents "an attempt to balance competing values: not only the importance of a damages remedy to protect the right of citizens ... but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Harlow*, 457 U.S. at 807, 102 S.Ct. at 2732, *quoting Butz v. Economou*, 438 U.S. 478, 504–06, 98 S.Ct. 2894, 2909–10, 57 L.Ed.2d 895 (1978). Moreover, the doctrine provides officials with an immunity from suit, rather than a simple affirmative defense to liability that serves

to rebut effectively a plaintiff's claims. *See Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. The official who seeks the immunity bears the initial burden of showing that public policy requires such an exemption. *Harlow*, 457 U.S. at 808, 102 S.Ct. at 2732. Once a defendant raises this defense, however, the plaintiff then bears the burden of showing facts that, if true, defeat the assertion of the doctrine. *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987).

■ For an official's discretionary actions to be protected under the doctrine, the inquiry "generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038, *quoting Harlow*, 457 U.S. at 818 & 819, 102 S.Ct. at 2738. A reviewing court must therefore examine first, whether a plaintiff has demonstrated a "clearly established" right that was violated by the defendant; and second, whether a reasonable official in the defendant's position should have known that the conduct at issue violated that right. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *see also Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir.1991); *Guercio v. Brody*, 911 F.2d 1179, 1184 (6th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 1681, 114 L.Ed.2d 76 (1991).

■ Rather than conduct our examination with the wisdom of hindsight, we must keep in mind the existing state of the law at the time of Meyers' discharge, its relative clarity, and the appropriate balance to be struck between the interests in vindicating citizens' constitutional rights and in the effective performance of public duties. *See generally Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038; *Johnson*, 935 F.2d at 111 (unlawfulness of official's actions is to be judged in light of preexisting law). Hence, to make these determinations, we must now examine the state of the law concerning public employees' First Amendment rights at the time of the plaintiff's demotion in March 1988.

To a large degree, our inquiry here is much simplified by our prior decision on this case. In *Meyers* I, we began our First Amendment analysis in the following manner:

Under the current somewhat imprecise standard, speech of a public employee is protected if (1) the speech addresses a matter of public concern, and (2) the employer has no overriding state interest in efficient public service that would be undermined by the speech.

934 F.2d at 729, *citing Rankin v. McPherson*, 483 U.S. 378, 384, 107 S.Ct. 2891, 289, 97 L.Ed.2d 315 (1987); *Connick v. Myers*, 461 U.S. 138, 146–50, 103 S.Ct. 1684, 1689–92, 75 L.Ed.2d 708 (1983); *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 574–75, 50 L.Ed.2d 471 (1977); *Pickering v. Board of Educ. of Township High School Dist.*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Langford v. Lane*, 921 F.2d 677, 680 (6th Cir.1991).

Our reasoning in that opinion establishes that the contours of public employee speech were by no means "clearly established" in early 1988. Rather, we referred to the "current somewhat imprecise standard." Examining the same line of cases that formed the basis of our opinion, the District Judge had reasoned earlier that Meyers' speech was merely personal opinion that was not a matter of public concern and that his demotion and constructive discharge did not infringe his right to free speech. Judges reached opposite conclusions on the First Amendment issue after reviewing the same legal materials. Thus, the requisite "clarity" of the law on this issue in March 1988 seems hardly to have been well established.

While we concluded in *Meyers I* that the actions taken by Rager and Meyers violated the First Amendment, nevertheless their disciplinary actions were undertaken within the scope of their discretion. Although their motivation was prompted by a desire to remove the plaintiff from the "limelight" (in Rager's words), the evidence suggests that both defendants believed their actions to be necessary to uphold the city's affirmative action policy. In the balance between vindication of citizens' rights and the effective performance of public officials duties—*see Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038—however, the lack of clarity in the existing law and the discretionary nature of their decisions stand in favor of the application of qualified immunity. We therefore hold that the defendants Rager and Johnson are entitled to the protection of qualified immunity.

Accordingly, the judgment of the District Court is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

RYAN, Circuit Judge, dissenting.

Because I disagree with the majority's conclusion that the defendants are entitled to the defense of qualified immunity, I respectfully dissent.

I.

As a preliminary matter, I agree with the majority that the two-prong test to determine whether a government official is entitled to the defense of qualified immunity requires a decision (1) whether a plaintiff has demonstrated a "clearly established" right that was violated by the defendants, and (2) whether reasonable officials in the defendants' positions should have known that their conduct violated that right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). I disagree, however, with the majority's application of that test to the facts of this case and, in particular, its failure to carefully examine and apply the law of a public employee's First Amendment rights as developed since *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

The majority opinion concludes, in remarkably summary fashion, that the free speech rights of public employees are not so well-established that the defendants should have reasonably known that their actions infringed on them, and thus, that the defendants are entitled to qualified immunity. The principal basis for that conclusion is a statement by this court in *Mey-*

*ers I* characterizing the legal standards for a public employee's free speech rights as being "somewhat imprecise." From that statement in *Meyers I,* the majority opinion concludes that we have "establish[ed] that the contours of public employee speech were by no means 'clearly established' in early 1988." I believe the majority has mistaken the lack of clarity at the boundaries of the law for uncertainty regarding its very core. It is true that the precise extent of public employees' First Amendment rights is unclear, but simply because we are unsure about First Amendment rights at the margins does not mean infringements against the essence of those rights are not readily apparent constitutional violations.

The majority opinion also refers to the district court's statement in what became *Meyers I* that Meyers's speech "was merely personal opinion that was not a matter of public concern" as an indication that Meyers's First Amendment rights were not clear and therefore that Meyers's statement was not entitled to constitutional protection. The majority has forgotten apparently that we reversed that very district court holding in *Meyers I,* and the language we used in doing so:

> In the instant case, plaintiff's speech is on a matter of public concern.... The charges against the plaintiff refer to an affirmative action lawsuit brought against the City of Cincinnati and the consent decree stemming from that suit as a reason for the city's affirmative action policy.... Just as an opinion concerning the general policy of affirmative action would be a matter of public concern, so too is speech concerning methods of implementing affirmative action. Under the facts of this case, speech about a politically charged issue like affirmative action—whether pro or con—should be considered a matter of public concern.

*Meyers v. Cincinnati,* 934 F.2d 726, 729–30 (6th Cir.1991). The majority opinion fails to explain how or why the reasoning of the lower court we held to be erroneous should now be invoked to exonerate the defendants from their liability for violating the clearly established rights of the plaintiff. The question, it seems to me, answers itself.

## II.

### A.

The core questions on this appeal are whether the law upon which the plaintiff relies—First Amendment right of free speech—was clearly established at the time of Meyers's constructive discharge and whether the defendants' actions were reasonable in light of then existing law. The answer to those questions requires an examination of the test for the First Amendment rights of public employees that was first developed by the Supreme Court in *Pickering,* 391 U.S. at 563, 88 S.Ct. at 1731. In *Pickering,* the Court declared that the First Amendment protects public employees from being disciplined for (1) commenting on matters of public concern, unless (2) the employee's interest is outweighed by the employer's interest in the "efficiency of public services it performs through its employees," because the employee's comments impair the efficient operation of those public services. *Id.* at 568, 88 S.Ct. at 1734.

We discussed the first, "public concern" prong of *Pickering* in *Meyers I.* However, a fuller discussion is merited today and will reveal, I believe, that there can be no serious doubt that the statement for which Meyers was effectively fired was on a matter of public concern.

In *Connick v. Myers,* 461 U.S. 138, 148, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), the Supreme Court held that speech having to do only with an employee's internal complaints about a supervisor or office policy is not a matter of public concern and therefore is not entitled to constitutional protection. Speech that concerns an issue important to the greater community, however, is entitled to such protection, even if it is made in a private forum. *Id.* at 148 n. 8, 103 S.Ct. at 1690 n. 8. Meyers's state-

ment,[1] given its broadest construction, was a comment on the efficacy of affirmative action policies in general and, more narrowly, on the effects of such policies on the safety, preparedness, and efficacy of the Cincinnati fire department. Courts have repeatedly held that these and similar issues are matters of public concern. For example, in *Connick* itself, the Court held that criticism of a school district's allegedly racially discriminatory policies involved a matter of public concern.

In *Donahue v. Windsor Locks Bd. of Fire Comm'r*, 834 F.2d 54 (2d Cir.1987), the Second Circuit held that an employee's complaints regarding perceived gender discrimination by the fire department for its failure to hire the employee's wife was speech protected by the First Amendment. In *Burgess v. Pierce County*, 918 F.2d 104 (9th Cir.1990), the plaintiff, a fire marshal, made statements regarding certain ordinances that he believed conflicted with state fire flow and private road standards and so threatened life and property—statements relating to the safety and preparedness of the fire department. These were held to be statements of public concern. And as long ago as 1974, in *Jannetta v. Cole*, 493 F.2d 1334 (4th Cir.1974), a fire department employee circulated a letter within the fire department after a black fireman was promoted over several white firemen with greater seniority, questioning the qualifications of the promoted fireman. When the letter circulator was fired, the court held that his dismissal "was impermissibly predicated upon his exercise of first and fourteenth amendment rights." *Id.* at 1338. Although the court did not explicitly hold that the statements were matters of public concern, it stated: "The

First Amendment is not limited in its protection to issues of great social and political impact, ... and Jannetta's petition should not be denied such protection simply because it dealt with matters of a local nature." *Id.* at 1337 n. 5. Thus, that the statements were on matters of concern to the local public was an implicit part of the court's rationale. *See also Dougherty v. Barry*, 604 F.Supp. 1424 (D.C.Dist.Col. 1985).

In addition to case law, common sense tells us that Meyers's statement addressed matters of public concern. The defendants' own statements during the controversy over Meyers's comments indicate that the defendants regarded city policy on affirmative action to be a matter of great public interest. Apparently that was the judgment of the Cincinnati area media as well, which gave considerable publicity to Meyers's comments. Indeed, it ought to be indisputable that the issue of affirmative action, especially in urban police and fire departments, commands intense public scrutiny and debate.[2]

In deciding this issue, the *Donahue* court wrote:

> As Thomas Emerson, the first amendment scholar, noted, free speech is most valuable when it relates to the exigencies of the time. T. Emerson, *The System of Freedom of Expression* (1970). Issues of gender-based discrimination and governmental decisions made in "smoke-filled" rooms are topical concerns in our society. Speech regarding these issues functions as a "check" upon the abuses by government. Moreover, it is in line with the greatest of American traditions, practiced by distinguished libertarians from Adams to Whitman, to inform the

---

1. As we wrote in *Meyers I*, the City takes the position that Meyers told two influential citizens "that he thought it was improper for [their company] to help people pass the civil service exams when they could not then do a good job." *Meyers I* at 727. Meyers denies that he made this statement.

2. A Nexis search for news articles regarding affirmative action in urban police and fire departments reveals that 125 articles on this topic were written in 1987 alone, the year in which Meyers's statements are alleged to have been

made. I also note that the Supreme Court's 1987 denial of certiorari for this court's decision in *Youngblood v. Dalzell*, 804 F.2d 360 (6th Cir.1986), *cert. denied*, 480 U.S. 935, 107 S.Ct. 1576, 94 L.Ed.2d 767 (1987)—in which we held that a consent decree imposing affirmative action on the Cincinnati fire department was a permissible remedy under the Equal Protection Clause—received significant media attention, ranging from local Cincinnati newspapers to the *New York Times*.

public of inequities. Thus Donahue's claims of gender-based discrimination and Freedom of Information Act violations fall within the first amendment's protective ambit: both were matters of public concern.

*Donahue,* 834 F.2d at 58. I believe that affirmative action policies and their possible effects on the safety, preparedness, and efficacy of the fire department are manifestly topics of public concern, and that Meyers's statements meet this prong of *Pickering.*

### B.

*Pickering's* second, "impairment of public services" prong was also discussed by this court in *Meyers I:*

> In order to justify a restriction on speech of public concern by a public employee, plaintiff's speech must impair discipline by superiors, have a detrimental impact on close working relationships, undermine a legitimate goal or mission of the employer, impede the performance of the speaker's duties, or impair harmony among co-workers. The state bears the burden of showing a legitimate justification for discipline.... The City offered no evidence of any adverse effect upon plaintiff's relationship with his co-workers, nor of any adverse impact upon the City's affirmative action program except for the anger the speech in question raised in Green and Foster. There was no evidence that the City's ability to provide firefighting services was undermined, nor evidence that plaintiff could not command the respect of his minority or non-minority subordinates.... Since there is no evidence of any City interest which would permit the limitation of the speech in question here, we hold that plaintiff's speech is protected under the First Amendment.

934 F.2d at 730. In its opinion today, the majority fails even to consider this prong of *Pickering.*

The Supreme Court has provided clear guidance on the question of how an employee's speech may impair a public employer's efficient operations, using virtual-ly the same language as that used by this court in *Meyers I. See Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987) (citing *Pickering,* 391 U.S. at 570–73, 88 S.Ct. at 1735–37). It should be recognized that an employer's interest in this regard may deserve heightened consideration in the fire department context. As the court in *Donahue* explained, the plaintiff's

> position as a fireman ... may be a factor in determining whether his speech warrants less protection than it otherwise would.... [T]he government has a legitimate interest in the smooth functioning of a public facility and, especially, in preserving the 'esprit de corps' that is essential to a fire department's joint endeavor of saving lives....

*Donahue,* 834 F.2d at 58 (citation omitted). The defendants produced no evidence whatsoever that could reasonably lead this court to conclude that the Cincinnati fire department's efficient operation of public services was impaired by Meyers's statements. The closest the majority gets to acknowledging this prong of *Pickering* is when it writes: "The evidence suggests that both defendants believed their actions to be necessary to uphold the city's affirmative action policy." But this is a far cry from saying that the City produced *evidence* that would lead one to conclude that the defendants' beliefs were objectively warranted. Moreover, affirmative action is not the public service that the fire department performs; fire fighting is. The record is totally devoid of evidence indicating that the department's fire-fighting ability was in any way impaired by Meyers's statement.

### III.

To reiterate, in considering whether the defendants are entitled to qualified immunity, we must determine (1) whether a plaintiff has demonstrated a "clearly established" right that was violated by the defendants, and (2) whether reasonable officials in the defendants' positions should have known that their conduct violated that right.

A.

B.

In *Shirley v. Chagrin Falls Exempted Village School Board of Education*, 521 F.2d 1329 (6th Cir.1975), we indicated that decisions from other circuits may not serve to put an official on notice that an action would violate the rights of an employee, because this would be tantamount to charging the official with predicting the future course of constitutional law. Nonetheless, I do not think there can be any difficulty in concluding that the core of public employees' First Amendment rights has been clearly established since *Pickering* in 1968. First of all, given the sheer mass of the cases (cited in part II.A.) construing statements similar to those at issue here to be protected by the First Amendment, there should be no hesitation to impute knowledge of the substance of that body of law to the defendants, even though those cases were generated by other circuits. Moreover, the Supreme Court has repeatedly spoken to the First Amendment rights of public employees, and it is clear that as the law stood when the defendants constructively discharged Meyers, "discharging a public employee in retaliation for protected speech violated clearly established law...." *Burgess*, 918 F.2d at 106 (citing, *inter alia, Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983); *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 414–16, 99 S.Ct. 693, 696–97, 58 L.Ed.2d 619 (1979)); *see also Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). All of this case law, with its consistent protection of public employees speaking on matters of public concern, should have made it apparent to the defendants that Meyers's speech was of a protected nature. Because Meyers's statements failed to impair the provision of fire-fighting services, the defendants should have been aware that there could be no justification for punishing him for the legal exercise of his free speech right.

Reasonable officials would have understood that their actions violated Meyers's First Amendment rights. As the Supreme Court stated in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987),

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039. Because the defendants were unable to demonstrate that Meyers's speech had an adverse effect on any interest of the City that is relevant under the *Pickering* balancing test, and because Meyers's statements so clearly related to matters of public concern, reasonably competent public officials should have known that Meyers's interest in commenting on the City's method of implementing affirmative action was not outweighed by any interest of the City in providing efficient fire-fighting services. Thus, reasonably competent public officials would not have embarked on a course of action leading to Meyers's constructive discharge.

IV.

We concluded in *Meyers I*— without any qualification or any indication that it was a close call—that Rager's and Johnson's actions violated Meyers's First Amendment rights. It is a mystery to me why the majority now justifies its grant of qualified immunity on the reasoning that First Amendment law on this issue is not well-established. The defendants should have known that Meyers's interest in expressing his views was not outweighed by any significant fire-fighting interest that could conceivably have been "impaired" by his statement. I would affirm the district

court's judgment denying qualified immunity to the defendants.