Sherry LINTZ, Keith Lintz, Sr., and Richele Nicole Jacobs, Brian Allen Jacobs and Keith James Lintz, Jr., by next Friend, Sherry Lintz, Plaintiffs,

v.

Linda K. SKIPSKI, Kendall Krause, Shirley Krause, Dale Krause, individually and in their official capacities, and Cass County Department of Social Services, and Other Unnamed Co–Conspirators, jointly and severally, Defendants.

No. 1:92–CV–83.

United States District Court,
W.D. Michigan, S.D.

Nov. 25, 1992.

Robert A. Yingst, Holly F. Underwood, Boothby & Yingst, Berrien Springs, Mich., for plaintiffs.

Charles C. Schettler, Jr., Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Tort Defense Div., Lansing, Mich., for Linda K. Skipski, Cass County Dept. of Social Services.

James M. Straub, Straub, Seaman & Allen, St. Joseph, Mich., for Kendall Krause, Shirley Krause and Dale Krause.

Richard H. Winslow, Cummings, McClorey, Davis & Acho, P.C., Battle Creek, Mich., for Mitchell Walker.

Gary R. Peterson, Oosterbaan, York, Cooper & Peterson, Kalamazoo, Mich., for Robin Zollar Smietanka.

## OPINION

QUIST, District Judge.

Plaintiffs brought this action under Title 42 U.S.C. § 1983 claiming they were deprived of constitutional rights. They have also alleged several pendent state law claims. Defendants Linda Skipski, Kendall Krause, Shirley Krause, Dale Krause and the Cass County Department of Social Services have filed motions to dismiss and motions for summary judgment claiming a variety of defenses and immunities.

## FACTS

Plaintiff Sherry Lintz is the natural parent of the minor plaintiffs, Richele Jacobs, Brian Jacobs and Keith Lintz, Jr. Plaintiff Keith Lintz, Sr. is the natural father of Keith Lintz, Jr. On May 22, 1987, the Cass County Probate Court made the minor plaintiffs temporary wards of the court pursuant to a neglect petition brought by the Michigan Department of Social Services.[1] By court order, the children were placed in the home of defendants Kendall and Shirley Krause. Mr. and Mrs. Krause were licensed foster care parents pursuant to M.C.L. §§ 722.111–118; M.S.A. §§ 25.-358(11)–(18). The children remained with the Krauses until approximately November 6, 1990, when they were placed in another foster home. The children were returned to the home of their natural parents on December 7, 1990.

Plaintiffs have alleged that during the children's stay in the Krause home, numerous atrocities occurred. They cite the following incidents. On June 16, 1988, Shirley Krause advised Robin Smietanka, a certified social worker, that Brian and Keith were acting out in a sexual manner. Brian was touching Keith's genitals. On September 12, 1988, Ms. Smietanka was advised that the minor plaintiffs were complaining of being hurt by Dale Krause, the minor

son of Dale and Shirley Krause. On July 17, 1990, Ms. Smietanka noted in her files that Shirley Krause had heard Keith saying "stop" after Brian had crawled into bed with him. On October 2, 1990, Mrs. Krause reported that she overheard Brian say to Keith "you take my pants down and I'll take your pants down." Plaintiffs contend that because no investigation was initiated to ascertain the reason for the inappropriate sexual behavior exhibited by these children the defendants were conspiring to cover up these incidents.

Finally, in approximately October of 1990, the children were allegedly sexually and physically abused by defendant Dale Krause. Dale Krause is the adopted son of Mr. and Mrs. Krause. He was placed with Mr. and Mrs. Krause as a foster child when he was two weeks old and was legally adopted by them at the age of two. In October of 1990, Keith, one of the minor plaintiffs, accused Dale Krause of inappropriate sexual contact. Keith allegedly told Ms. Smietanka that he had sucked Dale's penis after Dale promised him $2.00 and an opportunity to play Nintendo. The children were questioned about the incident by Mrs. Krause and Linda Skipski, a Department of Social Services worker. After this alleged incident, Mrs. Krause allegedly requested that the children be removed from the Krause home immediately. However, defendants Linda Skipski and Robin Smietanka told Mrs. Krause to keep the children. Based upon this recommendation the Krauses kept the children. As a result of the accusations against Dale Krause, Mrs. Krause allegedly took steps to ensure that the children were never in unsupervised contact with Dale Krause. Approximately a month later on November 6, 1990, the children were removed from the Krause home.

The plaintiffs' First Amended Complaint contains nine counts. Counts I, II and III allege federal claims pursuant to 42 U.S.C. § 1983 for deprivation of constitutional rights. Specifically, Count I alleges violation of Fourteenth Amendment substantive due process rights; Count II alleges viola-

---

1. Plaintiff Sherry Lintz subsequently pled responsibility to the neglect petition.

tion of Fourteenth Amendment procedural due process rights; and Count III alleges § 1983 conspiracy and coverup. The remaining counts set forth state claims.[2]

Defendants Cass County Department of Social Services, Linda Skipski and Kendall, Shirley and Dale Krause have filed motions for summary judgment and/or motions to dismiss.

### Summary Judgment Standard

Summary judgment is appropriate if there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* This standard requires the nonmoving part to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511. A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate that there is a genuine issue of material fact for trial. *Id.* The Court must draw all inferences in a light most favorable to the non-

moving party, but the Court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Cass County Department Of Social Services

Defendant Cass County Department of Social Services (Cass County DSS) contends that plaintiffs' claims against it are barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution restricts the power of federal courts to hear claims against states. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const.amend. XI.

Although the Eleventh Amendment, itself, does not bar a suit by a citizen of a state against the citizen's own state, the Supreme Court in *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) extended the Eleventh Amendment by holding that citizens could not sue their own state in federal court. Therefore, the State of Michigan and its agencies are immune from liability for damages or injunctive relief in federal court pursuant to the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) ("a suit in which the State or one of its agencies or departments, is named as the defendant is proscribed by the Eleventh Amendment").

Although a state's Eleventh Amendment immunity can be waived, the Supreme Court has held that Congress, in enacting § 1983, did not intend to abolish a state's

---

**2.** Counts IV through IX allege intentional infliction of emotional distress and mental anguish, liability for failure to supervise, negligence, as-

sault and battery, professional negligence and declaratory and injunctive relief.

Eleventh Amendment immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In *Will*, the court stated that § 1983 does not provide a federal forum for litigants seeking a remedy against a state for alleged deprivations of civil liberties.

■ Thus, this Court must consider whether the Cass County DSS is a state agency which is immune from liability under the Eleventh Amendment.[3] County DSS offices have repeatedly been found to be instrumentalities of the state. In *Emerson v. State of Michigan*, No. G88–562 CA (W.D.Mich. January 10, 1989), Judge Gibson found that the Grand Traverse County Department of Social Services and the Wexford County Department of Social Services were agents of the state for purposes of the Eleventh Amendment and therefore were entitled to dismissal on Eleventh Amendment grounds. Similarly, in *Monk v. Minzey*, No. K85–46 CA (W.D.Mich. December 26, 1985), this Court held that the Berrien County Department of Social Services was an agency of state government subject to dismissal pursuant to the Eleventh Amendment. *See also* O.A.G. 1967–1968, No. 4607, p. 174 (February 6, 1968) and O.A.G. 1975–1976, No. 4973, p. 400 (April 16, 1976). Plaintiffs have conceded in their Amended Complaint that the "Cass County Department of Social Services is a public service agency created and operated by the State of Michigan."

This Court finds that the Cass County Department of Social Services is a state agency, and, therefore pursuant to the Eleventh Amendment, it cannot be sued in federal court. Consequently, the Cass County Department of Social Services' Motion To Dismiss is granted.[4]

***Linda Skipski***

Plaintiffs have sued defendant Skipski in her individual capacity for monetary damages.[5] They allege that Ms. Skipski's failure to protect the minor children from abuse while they were placed in a foster care home violated their constitutional rights. Defendant Skipski contends that she is entitled to qualified immunity; and therefore, the plaintiffs' § 1983 claims against her are barred.

■ It is clear that the Eleventh Amendment does not bar plaintiffs from bringing claims for monetary damages against state officials who are sued in their individual capacities. *Foulks v. Ohio Dep't of Rehabilitation & Correction*, 713 F.2d 1229, 1233 (6th Cir.1983); *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, the qualified immunity doctrine shields government officials performing discretionary functions from civil damages liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The doctrine of qualified immunity applies to officials sued in their individual capacities provided:

> [A] reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions.

*Poe v. Haydon*, 853 F.2d 418, 423–24 (6th Cir.1988).

Defendant cites *Eugene D. v. Karman*, 889 F.2d 701 (6th Cir.1989) to support her

---

3. The state department of social services is responsible for the administration of child care organizations including foster homes. M.C.L. § 722.111; M.S.A. § 25.249(11). Any judgment against the Cass County Department of Social Services would be paid from the state treasury. M.C.L. § 18.1459; M.S.A. § 3.516(459).

4. The Cass County Department of Social Services also contends that because it is a state agency, it is not a "person" within the meaning of § 1983 and counts I, II and III should be dismissed. *See Will v. Michigan Dept. of State*

*Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, because the Court has already determined that the plaintiffs' entire action against the Department of Social Services should be dismissed on Eleventh Amendment grounds, it will not address this issue.

5. Because the Eleventh Amendment prevents this Court from entertaining damage actions against state officials sued in their official capacities, the damage claims against Ms. Skipski insofar as she is being sued in her official capacity must be dismissed.

position that qualified immunity protects social workers like herself from liability for injuries sustained by children in a foster care home. In *Karman,* the plaintiff brought a § 1983 action against Kentucky social workers claiming he was harmed during his placement in a state licensed foster home as a result of the social worker's deliberate indifference to his needs. The defendants argued that during the period when plaintiff was in a foster home [6] it was not clearly established that the due process clause of the Fourteenth Amendment imposed upon them a duty to assume responsibility for plaintiff's care.

The Sixth Circuit held that the right to personal safety in a foster home was not a clearly established federal right during the time period from 1974–1982. Consequently, the court refused to impose personal liability on the social workers. It stated:

> In an opinion issued on February 22, 1989, *DeShaney v. Winnebago County Dep't of Social Services* [489 U.S. 189 at 201 n. 9], 109 S.Ct. [998] at 1006 n. 9 [103 L.Ed.2d 249 (1989)] the Supreme Court made clear that it has not yet addressed whether the placement by the State of a child in a foster home operated by its agents, gives rise to an affirmative duty to protect that child. Likewise, our court has not yet addressed the issue, *nor need we do so today ....*

*Id.* at 707 (Emphasis added.)

In support of their motion, plaintiffs cite *Meador v. Cabinet for Human Resources,* 902 F.2d 474 (6th Cir.1990). In *Meador,* the Sixth Circuit specifically refused to address the issue of qualified immunity as it had not been raised in the district court. It did, however, consider whether a child allegedly abused in a foster home could raise a claim under § 1983. The court held that due process does extend to the "right to be free from the infliction of unnecessary harm to children in state-regulated foster homes." *Id.* at 476.

■ The issue this Court must decide is whether the right of a foster child to be free from unnecessary harm was sufficiently clear between May 1987 and No-

vember 1990 when the minor plaintiffs were placed in foster care so that "a reasonable official would understand that what he was doing violated the law."

In *Meyers v. Cincinnati,* 979 F.2d 1154 (6th Cir.1992), the Sixth Circuit considered whether municipal officials who had dismissed a public employee in violation of his First Amendment Rights were entitled to qualified immunity. The court determined that at the time of the plaintiff's dismissal the law regarding public employees' First Amendment rights was not "clearly established." Therefore, the requisite "clarity" of the law was lacking and the defendants were entitled to the protection of qualified immunity.

This Court believes that the constitutional right being claimed by the plaintiffs was not clearly established between May of 1987 and November of 1990. Until May of 1990 when the Sixth Circuit decided *Meador,* courts in this circuit had not even addressed whether such a right even existed—much less whether the right was clearly established. The Court does not believe that Ms. Skipski violated a clearly established constitutional right. Therefore, her motion will be granted based upon the doctrine of qualified immunity.

### Injunctive Relief

■ *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) permits plaintiffs to seek injunctive relief to restrain state officials sued in their official capacities from engaging in unconstitutional conduct. In their Amended Complaint, plaintiffs have sought injunctive relief against the Cass County DSS and its officials to prohibit further placement of foster care children in homes where previous sexual and/or physical abuse has occurred. Plaintiffs also seek to enjoin defendants from exercising policies and practices which result in the deprivation of protected statutory and constitutional protections of foster care children.

In *Los Angeles v. Lyons,* 461 U.S. 95, 105, 103 S.Ct. 1660, 1667, 75 L.Ed.2d 675 (1983), the plaintiff had allegedly been illegally choked by police officers after being

---

**6.** Plaintiff was placed in a foster home from May of 1974 to December of 1982.

stopped for a traffic violation. He brought a claim under § 1983 for damages and injunctive relief. The Supreme Court held that the plaintiff had failed to demonstrate a case or controversy which would justify injunctive relief. Although he had standing to assert a claim for damages, he could not establish a real and immediate threat that he would again be illegally choked; and therefore, he was not entitled to injunctive relief.

The plaintiffs in this case are similarly unable to establish an immediate threat that they will be subjected to the unconstitutional conduct of which they complain. The minor plaintiffs in this case are now residing with their natural mother and are not in danger of being threatened with sexual or physical abuse in a foster care home. Therefore, this Court finds that plaintiffs do not have standing to assert a claim for injunctive relief. Plaintiffs' claims for injunctive relief must be dismissed.

### *Kendall, Shirley And Dale Krause*

The Krauses contend that they are not "state actors" nor did they conspire with other defendants to deprive the plaintiffs of their federally-protected rights. Therefore, they are not subject to liability under 42 U.S.C. § 1983.

A plaintiff seeking redress under § 1983 must allege deprivation of a right secured by the federal Constitution or laws of the United States by a person acting under color of state law. The primary issue in deciding whether a private party's actions constitute "state action" is whether the party's actions may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

There are no Michigan or Sixth Circuit cases that specifically address the issue of whether foster parents are "state actors" for purposes of § 1983. The Sixth Circuit has, however, considered when the actions of a private party may constitute state action for purposes of § 1983. In *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992), the court considered whether the Portage Path Community Mental Health

Center (Portage Path) acted under color of state law when it fired the plaintiff, an employee, for alleged improper conduct. Portage Path is a private, non-profit corporation which contracted with the county to provide counseling and mental health services. The contract provided for government funding. It also required Portage Path to comply with regulations and submit financial records.

In determining whether Portage Path's decision to terminate the plaintiff could be attributable to the state, the Sixth Circuit applied three tests:

1. The public function test;
2. The state compulsion test; and
3. The symbiotic relationship or nexus test.

The Sixth Circuit concluded that Portage Path did not qualify as a state actor under any of the applicable tests. *Id.* at 1338. The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The court found that providing mental health services was not a power traditionally reserved to the state. Therefore, Portage Path did not constitute a state actor under the public function test. *Id.* at 1335.

The court also determined that Portage Path was not a state actor under the state compulsion test. The state compulsion test requires that a state exercise coercive power or provide such significant encouragement that the choice of the private actor is deemed to be that of the state. The court held that although the state provided a significant portion of the funding for Portage Path it did not choose the members of the board of trustees or make decisions for the facility. Therefore the state did not exercise coercive power or provide encouragement to make Portage Path's decision to terminate the plaintiff an action of the state. *Id.*

Finally, the court concluded that Portage Path was not a state actor under the symbiotic relationship or nexus test. Under that test, a private party's action constitutes state action if there is a sufficiently close nexus between a state and the chal-

lenged action of the regulated entity. The court noted that simply because a business is subject to regulation does not by itself convert its action into that of the state. Based upon this analysis, the Sixth Circuit concluded that Portage Path was not a state actor for purposes of § 1983. *Id.*

In this case, the plaintiffs have alleged that Mr. and Mrs. Krause were acting under color of state law. However, the Krauses do not qualify as state actors under the public function test. The care of foster children is not a power which has been exclusively reserved to the state. Neither are the Krauses state actors under the state compulsion test. The state did not exercise coercive power over the Krauses. Day-to-day parenting decisions were left to the judgment of the Krauses. Finally, the Krauses are not state actors under the symbiotic relationship test. In this case, a sufficiently close nexus between the state and the challenged action is lacking. Although the Krauses were required to be licensed, state regulation does not by itself convert a private party's action into that of the state. *Id.* at 1335. The fact that the Krauses received reimbursement from the state for expenses relating to the care of these children is equally nondispositive. Actions of a private party do not become state action merely because the government provides funding. *Id.* at 1336.

This Court is unaware of any case which has held that foster parents are state actors. Indeed, courts in other jurisdictions have refused to attribute the actions of foster parents to the state. In *Milburn v. Anne Arundel County Dept. of Social Services*, 871 F.2d 474 (4th Cir.1989), the minor plaintiff Charles Milburn, Jr. was voluntarily placed by his parents in the licensed foster home of Mr. and Mrs. Tucker. While he was in their care, Milburn sustained significant injuries as a result of abuse by his foster parents. He filed a complaint under 42 U.S.C. § 1983 alleging that his federal rights had been violated. The plaintiff argued that the Tuckers were state actors because the state produced the foster parents through its licensing procedure and promised to supervise his placement in the foster home. The trial court

dismissed the action. On appeal, the Fourth Circuit addressed the issue of whether the Tuckers were state actors:

... for a private party to fall within the scope of § 1983 as a state actor, the State must have so far insinuated itself into a position of interdependence with the charged party that it must be recognized as a joint participant in the challenged activity which, on that account, cannot be considered to have been so "purely private." [*Burton v. Wilmington Parking Authority*, 365 U.S. [715] at 725, 81 S.Ct. [856] at 862 [6 L.Ed.2d 45 (1961)]. For the relationship of the State to the Tuckers, the plaintiff depends on only a contract his foster parents signed with Anne Arundel County Department of Social Services, an agency home approval of the Tuckers home as a foster home for two children, and the Maryland statutes, Article 27, § 35A (1970), as that statute relates to reporting the suspected child abuse of the plaintiff.

871 F.2d 474, 477 (4th Cir.1989), relying upon *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The Court considered the following factors:

(a) The contract provided only general guidelines for the foster home;

(b) DSS was responsible for providing board, medical care, clothing and supervision of the child during the placement;

(c) The Tuckers did not receive compensation for the services;

(d) The contract did not provide for any specific conduct of the foster parents with respect to the foster child; and

(e) All of the day-to-day parenting decisions were left to the foster parents. *Id.* at 477.

Based upon these facts, the court determined that the Tuckers were not state actors. Neither the contract the Tuckers signed with DSS nor the agency's approval form provided for the type of intimate relationship between the state and the Tuckers which would convert the Tuckers' action into that of the state. The state did not exercise coercive power over the Tuckers

and was not responsible for the abuse itself. The court stated that the care of foster children is not traditionally the exclusive prerogative of the state. Therefore, the Tuckers' actions should not be attributed to the state.

In *Pfoltzer v. County of Fairfax*, 775 F.Supp. 874 (E.D.Va.1991), the plaintiffs brought an action alleging the state had violated their constitutional rights when their minor children were allegedly abused by foster parents. The court held that the foster parents were not state actors since the foster homes were not operated by the DSS. It also stated that the transfer of the childrens' physical custody to foster parents did not make the DSS the "permanent guarantor" of the childrens' safety. *Id.* at 884.

This Court finds that the Krauses are not state actors for purposes of § 1983. Their actions cannot be fairly attributable to the state. Therefore, the Krauses motion for summary judgment with regard to Counts I and II will be granted.

### Conspiracy

■■ Plaintiffs have alleged in Count III of their Complaint that the Krauses conspired with other defendants to cover up the alleged sexual and physical abuses which took place during the children's placement in the Krause home. They also cite Robert Krause's criminal record as evidence of a conspiracy among the defendants. Plaintiff Robert Krause, the adult son of Mr. and Mrs. Krause, pled guilty to Second Degree Attempted Criminal Sexual Conduct in 1984. Although Robert Krause did not reside in or visit the Krauses' home during the children's placement there, plaintiffs believe that because Robert Krause's conviction was not included in the official record the defendants conspired to cover up this information and deprive plaintiffs of their federally protected rights.

■■ Although a private individual cannot be liable under 42 U.S.C. § 1983, a conspiracy between a private individual and state officials can result in a § 1983 cause of action against a private individual. However, a private person must do more than passively acquiesce to directions given by a state official before he can be found to have shared the common objective of a conspiracy and therefore become liable under § 1983. *Taylor v. List*, 880 F.2d 1040 (9th Cir.1989). To establish a conspiracy it must be shown that a private person " 'willfully participate[s] in joint action with state officials to deprive others of constitutional rights.' " *Id.* at 1048 (quoting *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir.1989).

In *Pontarelli Limousine, Inc. v. Chicago*, 704 F.Supp. 1503 (N.D.Ill.1989), the plaintiffs were unable to prove a conspiracy because the private defendants were forced to accept a decision made by the city. The court stated in dicta:

> [I]t seems clear to this court that when a government body instructs a private party to choose among a variety of ways of doing business, the fact that the private party acquiesces in one of those ways in order to save its business does not make its agreement to do so a "meeting of the minds" for the purposes of § 1983 conspiracy law.

> As Judge Posner recently stated, "To be liable as a conspirator you must be a voluntary participant in a common venture."

*Pontarelli* at 1510.

In this case, the record clearly indicates that the Krauses did not expressly or impliedly agree with the other defendants to deprive the plaintiffs of their federally protected rights. Mrs. Krause repeatedly reported to Ms. Smietanka that the minor plaintiffs were exhibiting inappropriate behavior. Once Mrs. Krause learned of the allegations against her adopted son, she immediately requested that the children be removed from her home. When the Krauses were instructed by the state to keep the children in their custody, they complied with that instruction. Their passive acquiescence does not rise to the level of a conspiracy. Furthermore, this Court does not believe that Robert Krause's criminal record is material to the plaintiffs' claim of conspiracy. Robert Krause did not abuse the children. Indeed he did not even reside

in the Krause home during the relevant time period.

The plaintiffs' allegations with respect to conspiracy are insufficient to establish liability under § 1983. Therefore, the Krauses' motion for summary judgment with respect to Count III of the Complaint will be granted.

### Pendent Jurisdiction

Because this Court is dismissing Counts I, II and III of plaintiffs' Complaint which allege federal claims it no longer has jurisdiction over the pendent state law claims. Therefore, Counts IV–IX will be dismissed without prejudice so that plaintiffs may assert these claims in state court.

### SUMMARY

For the reasons stated above, this Court grants defendants' motions to dismiss and motions for summary judgment with respect to:

(1) Plaintiffs' claims against the Cass County DSS on the basis of Eleventh Amendment immunity.

(2) Plaintiffs' claims for damages against defendant Linda Skipski in her official capacity on the basis of Eleventh Amendment immunity.

(3) Plaintiffs' claims for damages against defendant Linda Skipski in her individual capacity based upon qualified immunity.

(4) Plaintiffs' claims for injunctive relief for lack of standing.

(5) Plaintiffs' claims against defendants Kendall, Shirley and Dale Krause for failure to state a claim under 42 U.S.C. § 1983.

(6) Plaintiffs' pending state law claims are dismissed without prejudice.

An Order consistent with this Opinion will be entered.