# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-4165

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Sherman T. Peneaux, | * | |
| | * | |
| Defendant-Appellant. | * | |

———————

Submitted: September 13, 2005
Filed: December 29, 2005

———————

Before ARNOLD, HANSEN, and MURPHY, Circuit Judges.

———————

MURPHY, Circuit Judge.

A jury convicted Sherman Peneaux on four counts of aggravated sexual abuse of a child, T.P., and on two counts of assault, and the district court[1] imposed concurrent sentences of 180 months for the sexual abuse offenses and 60 months for the assault convictions. Peneaux appeals, arguing that there was insufficient evidence to sustain his convictions, that hearsay statements were improperly admitted, and that his constitutional right to confrontation was violated. We affirm.

———————

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota.

In March 2002 the South Dakota Department of Social Services (DSS) removed T.P. and her siblings, N.P. and Fianna, from the custody of their parents, Sherman Peneaux and Juanita Swalley, based on allegations that Peneaux had abused Fianna. At that time T.P. was three years old, and N.P. was two. The children were placed in the Spotted Tail Crisis Center, and T.P. subsequently reported that Peneaux had sexually abused her and extinguished a cigarette on her body. T.P. made the statements to tribal police investigator Grace Her Many Horses, forensic investigator Lora Hawkins, child care case worker Zane McClarnnan, pediatrician Dr. Lori Strong, and two different foster parents, Edith Connot and Penny Norris.

In March 2003, Peneaux was indicted on four counts of aggravated sexual abuse of a child under the age of twelve, 18 U.S.C. § 2241(c) (counts I-IV), one count of assault with a dangerous weapon, 18 U.S.C. § 113(a)(3) (count V), and one count of assault resulting in serious bodily injury, 18 U.S.C. § 113(a)(6) (count VI).

The case went to trial in September 2004, and the government called tribal investigator Grace Her Many Horses after other witnesses had provided background information. She testified without objection about statements T.P. made during an interview with her. She reported that T.P. told her that she had been sexually and physically abused. Then the government called T.P. to the stand; her testimony was inconsistent. On direct examination T.P. denied that Peneaux had abused her, but acknowledged that she had previously told people that she had been sexually abused. The prosecutor presented her with drawings of a naked man and woman and asked her to mark the part of Peneaux's body which had touched her and the part of her body which Peneaux had touched. T.P. circled the genital region and anus on both the male and female diagrams. When she was asked to identify the areas she had marked, she called them the "pee-pee" and "butt." Without objection the diagrams were received into evidence as exhibits. T.P. was also asked how she received the burn mark on her

stomach. She responded that Peneaux had inflicted it with a lit cigarette, but she denied he had ever burned her when questioned by defense counsel.

The government called other individuals with whom T.P. had spoken prior to trial. Zane McClarnnan, an employee of the Spotted Tail Crisis Center, testified that T.P. told him that "my dad likes to undress me" and would "lay on top of me." T.P.'s stepmother, Juanita Swalley, was asked about statements she had made to the FBI and whether she had disclosed that T.P. told her "daddy was doing loving to me" and other similar comments. Swalley answered that she could not remember precisely what she had told the agents, but she acknowledged that she had signed the statement she gave to the FBI. The defense did not object to the testimony of either of these witnesses.

Foster parent Edith Connot testified to an incident she had observed at her home. She saw T.P. under her kitchen table touching the genitals of her four year old son. When Connot explained that such behavior was inappropriate, T.P. replied that her father touched her in that way. Again there was no objection by the defense. T.P.'s other foster parent, Penny Norris, testified that she saw many little white marks on T.P.'s body. T.P. told her that Peneaux had burned her with his cigarettes when Norris asked if she had been bitten by bugs. Norris also testified to statements made by N.P., T.P.'s brother, that Peneaux had also burned him with a cigarette. No objection was raised to any of this testimony. The defense did object to testimony Norris gave about a conversation she had with Dr. Allison during a wellness check of T.P. which she had arranged after learning that Peneaux might have physically and sexually abused the child. Norris reported that Dr. Allison had remarked that the circular marks on T.P. could be cigarette burns.

The government next called forensic investigator Lora Hawkins, who testified to statements T.P. had made during two separate interviews. Hawkins testified that during the first interview T.P. told her that "my daddy gets on top of me," that "my daddy touches my pee-pee," and that he wanted her to touch "by his pee-pee."

Hawkins also testified that when asked where Peneaux had touched her, T.P. grabbed her crotch. Hawkins further testified that during their second interview, T.P. "consistently presented the same information" and told her that Peneaux had touched her genitals both with his fingers and his penis and that he had tried to penetrate her anus with his penis. Not only did the defense not object to Hawkins' testimony, it offered to introduce the video recordings of these interviews into evidence if the government did not. Peneaux's counsel also had written transcripts of the videos made and entered them into evidence.

Dr. Lora Strong, a pediatrician who examined both T.P. and her brother, was another government witness. She testified about T.P.'s statements indicating that Peneaux had abused her sexually and physically and about her own physical findings. When Dr. Strong asked T.P. whether anyone had touched her where "she goes pee from," T.P. responded yes. When asked who had done it, she stated "Sherman." When asked where Peneaux hurt her, T.P. pointed to her genital area. When asked about her circular scar, T.P. replied "Sherman hurt me." When asked how, she answered "burn with cigarette."

Although the defense did not object to Dr. Strong's testimony about T.P., it did object to her testimony about T.P.'s brother, N.P. No grounds were given for the objection, and it was overruled. Dr. Strong then testified that N.P. had a circular scar on his right knee which was similar to the one found on T.P. She also testified that when she asked N.P. how he got hurt, he responded "burn." When asked what that meant, he answered "Sherman" and "Sherman hurt."

The final government witness was FBI agent William Grode, who interviewed Peneaux while he was awaiting trial. Grode testified that Peneaux admitted that he sometimes slept in the nude and that his children often got into bed with him and that T.P. would snuggle up to him.

The defense called witnesses who testified that they never saw Peneaux sexually or physically abuse T.P. or his other children. The assistant to T.P.'s health care provider testified that T.P. had been examined numerous times before she was removed from her parents' custody and nothing in her records indicated she had been burned. No physical evidence indicating sexual abuse had been reported, and Dr. Strong had noted that her genitals were normal for her age. Although the mark on her stomach was consistent "with the possibility" of a cigarette burn, Dr. Strong admitted something else could have caused it. Betty Kallinger, a physician's assistant at the Horizon Health Care Mission where T.P. was often treated, testified that T.P.'s medical records did not indicate that she had been burned and that the scar could have resulted from an infected sore.

At the conclusion of the government's case the defense moved for a judgment of acquittal which was denied. The defense again moved for judgment of acquittal at the conclusion of all the evidence; the court reserved ruling on the motion and submitted the case to the jury. The jury returned guilty verdicts on all counts, and the defense moved for judgment notwithstanding the verdict and alternatively for a new trial. Both motions were denied. Peneaux appeals, arguing that there was insufficient evidence to sustain his convictions and that the district court abused its discretion by admitting statements which were hearsay and which violated his constitutional right to confrontation.

II.

Peneaux argues that the evidence at trial was insufficient to sustain his conviction, in large part because T.P.'s prior out of court statements should not have been admitted and cannot be considered as substantive evidence. In reviewing his sufficiency argument we consider "the same quantum of evidence that was considered by the trial court in determining whether a motion for judgment of acquittal should have been granted, even if some of the evidence is later determined to be

inadmissible." United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir. 2005); see also Lockhart v. Nelson, 488 U.S. 33, 40-42 (1988); United States v. Cruz, 363 F.3d 187, 197 (2d Cir. 2004); United States v. Alexander, 331 F.3d 116, 128 (D.C. Cir. 2003). We thus start by considering all the evidence. Although evidentiary errors will sometimes require a new trial, the issue on a motion for judgment of acquittal is whether the evidence at trial was "sufficient to support a conviction." Kenyon, 397 F.3d at 1076. In considering whether the evidence was sufficient to sustain Peneaux's conviction we view the evidence "in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict" and will only reverse the conviction if we find that "no reasonable jury" could have found him guilty. United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003).

Peneaux complains that there was insufficient evidence to sustain his conviction on all counts. Peneaux was convicted on counts I-IV for sexual abuse of a child under the age of twelve. 18 U.S.C. §2241(c). Peneaux argues that T.P. contradicted these charges by denying the abuse ever occurred and that medical evidence established that T.P.'s genitals showed no signs of sexual trauma. The government produced many witnesses who confirmed that T.P. said she had been sexually abused by Peneaux. It also provided a logical explanation, through Dr. Strong's testimony, as to why T.P.'s genitals may not have been damaged or scarred by the abuse.

Peneaux's challenge hinges on the credibility of the various witnesses. Credibility is the province of the jury, Kenyon, 397 F.3d at 1076, and we resolve any conflicts in favor of the jury verdict. United States v. Goodlow, 105 F.3d 1203, 1206 (8th Cir. 1997). While there was conflicting testimony, we find after reviewing the entire record that a jury could have reasonably determined that Peneaux was guilty on counts I-IV and we affirm the district court's denial of the motion for acquittal on these counts.

As to count V charging assault with a dangerous weapon, Peneaux complains that the government did not prove that the cigarette was a "dangerous weapon" under 18 U.S.C. § 113(a)(3) because it failed to show that a burn could endanger life or cause serious bodily harm. The issue of whether a cigarette constitutes a dangerous weapon is a question of fact for the jury, and its verdict will not be lightly overturned. United States v. Phelps, 168 F.3d 1048, 1055 (8th Cir. 1999). To sustain a conviction under 18 U.S.C. § 113(a)(3), the government must have presented "sufficient evidence that appellant assaulted the victim with an object capable of inflicting bodily injury, not that the victim actually suffered bodily injury as a result of the assault." United States v. LeCompte, 108 F.3d 948, 952-53 (8th Cir. 1997). Such innocuous objects as pool sticks, United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982), and chairs United States v. Johnson, 324 F.2d 264, 266 (4th Cir. 1963), have been found to constitute dangerous weapons in certain circumstances, and we have no doubt that extinguishing a lit cigarette on the body of a three year old child could inflict serious bodily harm. We conclude that the government has satisfied its burden.

As to count VI charging assault resulting in serious bodily injury, Peneaux argues that the alleged burn on T.P.'s torso does not meet the definition of "serious bodily injury" under 18 U.S.C. § 113(b)(2) (incorporating the definition provided in 18 U.S.C. § 1365(h)(3)), but that it is merely a "bodily injury" under 18 U.S.C. § 1365(h)(4). Appellant apparently overlooks the fact that the definition of "serious bodily injury" includes both "extreme physical pain" and "protracted and obvious disfigurement." 18 U.S.C. § 1365(h)(3)(B)&(C). The government offered testimony from Dr. Strong that the scar on T.P.'s abdomen was consistent with a cigarette burn, pictures of it were introduced into evidence, and the jury heard testimony from various individuals indicating that Peneaux had caused the scar by burning T.P. with a cigarette. Determining whether an injury is serious is an issue for the jury to decide based on its "common understanding" of the term, United States v. Two Eagle, 318 F.3d 785, 791 (8th Cir. 2003), and we find it entirely reasonable for a jury to conclude from the evidence that burning a three year old with a lit cigarette would cause

"extreme physical pain" or "obvious disfigurement" constituting serious bodily injury under 18 U.S.C. § 1365(h)(3)(B)&(C). Both the government and Peneaux made their respective arguments to the jury; the jury weighed the evidence and found against Peneaux.

Finally, Peneaux challenges the sufficiency of the evidence for counts V and VI. Peneaux argues that the government failed to prove he inflicted any burn. On direct examination T.P. stated that Peneaux had burned her with his cigarette, and her out of court statements about this were confirmed by numerous government witnesses. The jury also saw photographs of the scar and heard medical testimony that the circular scar on T.P. was consistent in shape and diameter to ones inflicted by a cigarette. Based on the record before us, we find that a reasonable jury could have found Peneaux guilty and we affirm the district court's denial of Peneaux's motion for acquittal on counts V-VI.

III.

Peneaux complains that the district court improperly admitted T.P.'s prior inconsistent statements as substantive evidence. He devotes much of his brief to arguing that unsworn prior inconsistent statements cannot be admitted as substantive evidence under Rule 801(d)(1)(A). The government does not refute this argument, but instead contends that these statements were properly admitted in this case as substantive evidence under Rule 807, the residual exception to the hearsay rule, and Rule 803(4), the exception for statements related to medical diagnosis or treatment. Peneaux cites no authority for the proposition that a jury cannot consider residual hearsay as substantive evidence, and we have repeatedly allowed the admission of residual hearsay testimony for that purpose. United States v. Dorian, 803 F.2d 1439, 1443-46 (8th Cir. 1986); United States v. Renville, 779 F.2d 430, 439 (8th Cir. 1985). If the testimony was properly admitted, it may be considered as substantive evidence,

and the district court was not obligated to tell the jury it could not consider inconsistent statements as substantive evidence.

In order for testimony to be admissible under Rule 807 there must be a showing that (1) the statement has equivalent circumstantial guarantees of trustworthiness to the other hearsay exceptions; (2) the statement is offered as evidence of a material fact; (3) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; (4) the general purposes of the rules and the interests of justice will best be served by its admission; and (5) adequate notice must be given to the opposing party. See Fed. R. Evid. 807; United States v. Balfany, 965 F.2d 575, 581-82 (8th Cir. 1992). We review the district court's determination of admissibility of residual hearsay testimony for abuse of discretion. United States v. Thunder Horse, 370 F.3d 745, 747 (8th Cir. 2004). Where the defendant has failed to preserve the error for appeal, however, we review the admission of evidence only for plain error. United States v. Carter, 410 F.3d 1017, 1023 (8th Cir. 2005).

Peneaux complains that T.P.'s out of court statements to Zane McClarnnan, Penny Norris, Juanita Swalley, and Lora Hawkins should not have been admitted under Rule 807. He argues that prior inconsistent unsworn statements are not evidence of a material fact and cannot be more probative than the victim's own testimony. According to him, admission of such statements is contrary to the congressional intent limiting the use of statements admitted under Rule 801. Because Peneaux did not object to this testimony during trial we review its admission only for plain error. In order to establish plain error, a party must demonstrate (1) an error, (2) that is plain, and (3) which affects substantial rights. If those elements are met, we will not reverse unless the "error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732-36 (1993).

In this case there is no issue about adequate notice under Rule 807. Well before trial the government complied with the rule by filing notice of its intent to introduce T.P.'s prior out of court statements through the testimony of Zane McClarnnan, Penny Norris, Lora Hawkins, and Juanita Swalley. The notice also provided information about the nature of the statements or where they could be located, along with the names, addresses, and phone numbers of the witnesses. The defense made no response or objection to the notice, and it did not object at trial to the admission of T.P.'s out of court statements through the testimony of these witnesses.

Although Peneaux has not argued that these statements are untrustworthy, we nevertheless consider the issue, for "as the trustworthiness of a statement increases, the justification for excluding it decreases." United States v. Shaw, 824 F.2d 601, 609 n.9 (8th Cir. 1987), rev'd on other grounds 24 F.3d 1040 (8th Cir. 1994). We consider many factors in determining whether particular statements are trustworthy, including whether the questions were open ended, whether the child used age appropriate language in describing the abuse, and whether the child repeated the same facts consistently to adults. See Thunder Horse, 370 F.3d 745; United States v. NB, 59 F.3d 771, 776 (8th Cir. 1995).

Here, T.P. consistently alleged both sexual and physical abuse prior to trial, she used language appropriate for a young child in talking about the abuse, she circled the parts of her body that Peneaux had touched on an anatomically correct diagram, and there was no allegation of coercion or coaching. Her out of court statements were either made in response to open ended questions from Lora Hawkins and Penny Norris or were simply volunteered to Zane McClarnnan. At trial she admitted that she had made these prior statements although she challenged their veracity. The fact that T.P. testified at trial and was subject to cross-examination "vitiates the main concern of the hearsay rule." Renville, 779 F.2d at 440. The jury was able to weigh her statements and accord them whatever weight they deemed appropriate. Thunder Horse, 370 F.3d at 748; United States v. Grooms, 978 F.2d 425, 428 (8th Cir. 1992). We conclude that

T.P.'s prior out of court statements admitted under Rule 807 possessed equivalent circumstantial guarantees of trustworthiness to the other hearsay exceptions.

The materiality requirement in Rule 807 is merely a "restatement of the general requirement that evidence must be relevant." McCormick on Evidence § 324 (5th ed. 2003); see Huff v. White Motor Corp., 609 F.2d 286, 294 (7th Cir. 1979) (materiality question is similar to Rule 401 relevance inquiry). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The out of court statements of T.P. to Zane McClarnnan, Penny Norris, Juanita Swalley and Lora Hawkins are relevant to the issues here, for they identified both the type of abuse inflicted upon T.P. and her abuser.

We have previously upheld the admission of residual hearsay statements where the child victim testified at trial, Grooms, 978 F.2d 425, and recanted earlier accusations. Renville, 779 F.2d at 439-40. As we explained in Shaw, "a deferential standard of review" is appropriate where the district judge "was able to watch and listen to the witnesses as they testified," as is the case here. Shaw, 824 F.2d at 609. Where testifying adults are able to provide information that the victim is unwilling or unable to give, this testimony may come in under Rule 807. Shaw, 824 F.2d at 610.

Congress added Rule 803(24), the predecessor to Rule 807, because it could not foresee every possible evidentiary scenario. And while Congress intended the residual hearsay exception to "be used very rarely, and only in exceptional circumstances," S. Rep. No. 1277, 93d Cong., 2d Sess., at 20 (1974), exceptional circumstances generally exist when a child sexual abuse victim relates the details of the abusive events to an adult. Shaw, 824 F.2d at 609; Dorian, 803 F.2d at 1443-46; United States v. Cree, 778 F.2d 474, 476-78 (8th Cir 1985); Renville, 779 F.2d at 439-41. Here, the trial testimony of T.P. was inconsistent and at times unclear. The testimony of McClarnnan, Norris, Swalley, and Hawkins aided the jury in its fact finding task to

-11-

determine whether T.P.'s allegations were true. The admission of this hearsay testimony was thus in the interest of justice and consistent with the requirements of Rule 807.

We conclude that the admission of T.P.'s prior out of court statements complied with Rule 807. The government provided the requisite notice and the statements were trustworthy, material, and more probative than T.P.'s hesitant trial testimony. Admission of the evidence was also consistent with the structure and purpose of the Federal Rules of Evidence. Finding no error in its admission, we need not discuss the remaining Olano factors.

Peneaux contends that Dr. Strong's testimony about what T.P. told her was inadmissible under Rule 803(4), which requires that hearsay statements be reasonably pertinent to medical diagnosis or treatment. Because Peneaux did not preserve this alleged error, we review for plain error. Olano, 507 U.S. at 732-36. Under this rule the proponent of the evidence must show that the statement is of the type reasonably relied on by a physician in treatment or diagnosis and that the declarant's motive in making the statement was consistent with promoting treatment. United States v. Iron Shell, 633 F.2d 77, 84 (8th Cir. 1980). While a declarant's statements identifying the party allegedly responsible for her injuries may normally not be reasonably pertinent to treatment or diagnosis, Iron Shell, 633 F.2d at 84, we have consistently found that "a statement by a child abuse victim that the abuser is a member of the victim's immediate household presents a sufficiently different case from that envisaged by the drafters of Rule 803(4) that it should not fall under the general rule" and that such statements "are reasonably pertinent" to treatment or diagnosis. Renville, 779 F.2d at 436-37; see also United States v. Gabe, 237 F.3d 954, 958 (8th Cir. 2001); Balfany, 965 F.2d at 581; U.S. v. Provost, 875 F.2d 172, 177 (8th Cir. 1989).

T.P.'s statements identifying Peneaux as the abuser are of the type reasonably relied upon by a physician for treatment or diagnosis. See Renville, 779 F.2d at 436-

37; <u>Shaw</u>, 824 F.2d at 608. Due to the nature of child sexual abuse, a doctor must be able to identify and treat not only physical injury, but also the emotional and psychological problems that typically accompany sexual abuse by a family member. Moreover, such a statement may be relevant to prevent future occurrences of abuse and to the medical safety of the child. Dr. Strong explained that identification of the abuser is a matter of great concern because if the person who brought the child to the clinic is the abuser, the child should not leave with that individual. She also testified about her need to report problem relationships to the state as mandated by a South Dakota law requiring physicians to prevent an abused child from being returned to an environment where the child cannot be adequately protected from recurrent abuse. S.D. Codified Laws § 26-8A-3 (2005).

The more difficult Rule 803(4) question relates to T.P.'s motive. The motive requirement means that the victim must have had a "selfish subjective motive of receiving proper medical treatment" or the state of mind of someone seeking medical treatment. <u>United States v. Turning Bear</u>, 357 F.3d 730, 739 (8th Cir. 2004); <u>Gabe</u>, 237 F.3d at 958. To satisfy this rule, a proponent must show that a child understands "the medical significance of being truthful." <u>United States v. Summers</u>, 204 F.3d 1182, 1186 (8th Cir. 2000). This requirement is especially important in sexual abuse cases since "not even an adult necessarily understands the connection between a sex abuser's identity and her medical treatment." <u>Gabe</u>, 237 F.3d at 958.

Dr. Strong testified that she told T.P. what they were going to "visit about" and showed T.P. her medical equipment. She also explained to T.P. that as her doctor she needed to treat her for any types of germs that might be on her private parts and that it was important for her to be honest in answering questions because germs could make her sick. According to Dr. Strong's testimony T.P. appeared to understand what the doctor had explained to her, and that evidence was relevant on the issue of the little girl's understanding of the need to tell the truth. Even if Dr. Strong's testimony were erroneously admitted, however, it would not have been plain error since

-13-

Peneaux's substantial rights were not affected in light of the significant amount of other evidence identifying Peneaux as T.P.'s abuser. Dr. Strong was one of many witnesses who testified that T.P. had identified Peneaux before trial as her abuser. Many of T.P.'s prior statements were admissible under Rule 807, and others were not objected to at trial or on this appeal.

Peneaux complains that the admission of Dr. Allison's out of court statement to Penny Norris about N.P.'s scar was improper. He objected to Norris' testimony about her recollection of what Dr. Allison told her about a circular scar on N.P.'s body which resembled T.P.'s scar, but the objection was overruled. The government now concedes that this testimony should have been excluded, and we agree. We will not reverse a conviction, however, if an evidentiary error is harmless. United States v. Byler, 98 F.3d 391, 394 (8th Cir. 1996). An evidentiary error is harmless if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict. United States v. Blue Bird, 372 F.3d 989, 994 (8th Cir.2004). To determine whether the error was harmless we review the entire record to determine whether the substantial rights of the defendant were prejudiced by the admission. Id.; Byler, 98 F.3d at 394.

An error in admitting hearsay testimony in a child sexual abuse case is harmless if the evidence was cumulative to other hearsay testimony to which the defendant did not object. Gabe, 237 F.3d at 958-59. Norris testified that Allison had stated that the circular scar on N.P. "could be burns," but Norris later testified without objection that N.P. said Peneaux had burned him. Moreover, T.P.'s testimony that she had seen Peneaux burn N.P. with a cigarette had already been admitted without objection, and Peneaux has not challenged that evidence on appeal. Although Peneaux objected to Dr. Strong's testimony about her physical examination of N.P., he did not object to admission of the videotape of the physical examinations she conducted of both children. T.P. had already testified that Peneaux had burned her and that had been confirmed by Dr. Strong. The jury was able to view and compare the scars from T.P.

and N.P. and make its own findings from all this evidence. We conclude that permitting Penny Norris to testify to Dr. Allison's comments was at most harmless error.

Peneaux contends that the district court violated his right to confrontation by allowing Dr. Strong and Penny Norris to testify about N.P.'s statements because they were testimonial in nature, citing Crawford v. Washington, 541 U.S. 36 (2004). Peneaux argues that Dr. Strong was acting on behalf of the Child Advocacy Center when she talked to N.P. and he made the statements, and that the Center is a collaborative effort between the medical system, law enforcement, social services, and the judiciary. N.P.'s statements to Penny Norris were "elicited through the foster parent's interrogation" he claims. Since foster parents are answerable to DSS, he contends that such questioning could result in a report to the agency and a referral to law enforcement.

In Crawford, the Supreme Court held that the confrontation clause bars the admission of testimonial statements unless the accused has had a prior opportunity to cross examine an unavailable declarant. Crawford, 541 U.S. at 53-54. The Court gave some examples of a "core class of testimonial statements," including affidavits, depositions, and prior testimony not subject to cross examination. Id. at 52. The closest the Court came to defining the term "testimonial statement" was in its catchall example of "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. After this general discussion the Court decided that "[s]tatements taken by police officers in the course of interrogations are also testimonial" even when unsworn. Id. The Court also indicated that it was speaking of interrogation in a colloquial sense rather than a technical one. Id. at 53 n.4.

We applied Crawford in United States v. Bordeaux, 400 F.3d 548 (8th Cir. 2005), a case involving a child sex abuse victim who was only available by closed

circuit television for much of her testimony and for all of her cross examination. The district court in <u>Bordeaux</u> had admitted a videotaped statement of the child victim made in an interview with someone the government referred to as a "forensic interviewer." Two videotapes had been made, and one was specifically prepared for law enforcement purposes. <u>Id</u>. at 555. We held that the admission of the child's statement had violated the defendant's confrontation rights because (1) the purpose of her interview had been "to collect information for law enforcement" so her statement was testimonial, and (2) the child had not been available in the courtroom for cross examination. <u>Id</u>. We review a confrontation clause challenge de novo and the "underlying factual determinations for clear error." <u>Id</u>. at 552

The case before the court differs from <u>Bordeaux</u> in important ways. N.P. was taken to Dr. Strong by his foster parents for a medical examination after they noticed "some marks on his body". Dr. Strong is a pediatrician, and no forensic interview preceded her meeting with N.P. Dr. Strong's interview with N.P. was for the purpose of ensuring his health and protection, and there is no evidence that the interview resulted in any referral to law enforcement. The interview lacked the "formality of ... questioning," the substantial "government involvement," and "the law enforcement purpose" present in <u>Bordeaux</u>. 400 F.3d at 555-56. Dr. Strong testified at trial and was available for cross examination about her physical findings and about her interview with N.P. Although N.P. did not testify, his statements to Dr. Strong about his burn were merely cumulative to the testimony other witnesses had given without objection about what N.P. had said about his scar. N.P. was also not the victim of the charged offense, unlike the child whose interview at issue in <u>Bordeaux</u>. Where statements are made to a physician seeking to give medical aid in the form of diagnosis or treatment, they are presumptively nontestimonial. <u>See</u> <u>State v. Vaught</u>, 682 N.W.2d 284, 326 (Neb. 2004); <u>compare</u> <u>State v. Snowden</u>, 867 A.2d 314, 329-30 (Md. 2005) (declining to extend the reasoning of <u>Vaught</u> to testimony of social workers). N.P.'s statements to Dr. Strong fall into the this treatment category and were nontestimonial in nature.

Appellant also complains that the statements of N.P. to Penny Norris are testimonial under Crawford because Norris was an agent of the state when she elicited statements from N.P. The premise of this argument is that foster parents are agents of the state, yet Peneaux cites no case treating foster parents as such. A contrary body of case law indicates that foster parents are generally not considered agents of the state. See White v. Chambliss, 112 F.3d 731, 739 (4th Cir. 1997) (state has no affirmative duty for children placed in foster care); Weller v. Dep't of Social Servs. for Baltimore, 901 F.2d 387, 392 (4th Cir. 1990) ("the harm suffered by a child at the hands of his foster parents is not harm inflicted by state agents"); K.H. Through Murphy v. Morgan, 914 F.2d 846, 852 (7th Cir. 1990) ("We may assume, without having to decide...that the foster parents, even if paid by the state, are not state agents for constitutional purposes"); Lintz v. Skipski, 807 F. Supp. 1299, 1306-07 (W.D. Mich. 1992) ("This Court is unaware of any case which has held that foster parents are [S]tate actors."). We conclude that Penny Norris was not an agent of the state and that N.P.'s statements to her were not testimonial within the meaning of Crawford.

## IV.

In sum, we conclude that there was sufficient evidence for a reasonable jury to find Peneaux guilty of sexual abuse and assault, that the admission of Dr. Allison's statements about N.P. was at most harmless error, and that the able trial judge did not otherwise err or abuse his discretion in admitting disputed evidence. We therefore affirm the judgment of the district court.

_____